| | |
|---|---|
| **In re:** | **Chapter 11** |
| **Whitehall Manor, Inc., et al.,[1]** | **Case No. 25-15245-PMM** |
| **Debtors.** | **Jointly Administered** |

## MEMORANDUM OF LAW
## IN SUPPORT OF A STAY PENDING APPEAL

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their counsel, Dilworth Paxson LLP, hereby file this Memorandum of Law in Support of a Stay Pending Appeal of this Court's March 19, 2026 Order and Opinion Granting the Motion to Dismiss Debtors Saucon Valley Trust and Whitehall Trust (Case No. 25-15241, D.I.s 263 and 264, together, the "Dismissal Order"). The Dismissal Order dismissed the bankruptcy cases of the two Trust Debtors on the basis that they were not eligible Debtors under Section 109 of the Bankruptcy Code. That ruling is case dispositive as to two of the four Debtors and has serious consequences for the remaining Manor Debtors. Accordingly, the Debtors have requested a stay pending a direct appeal to the Third Circuit.[2]

### I.       Legal Standard

Courts in the Third Circuit follow the *Revel* standard, and its "sliding-scale approach," for determining whether a stay of a bankruptcy court's order pending resolution of appeal is appropriate.  *In re Revel AC, Inc.*, 802 F.3d 558, 568-70 (3d Cir. 2015). This approach considers:

---

[1] The Debtors in these Chapter 11 Cases are: (i) Whitehall Trust; (ii) Saucon Trust; (iii) Whitehall Manor, Inc. (5606); and (iv) Saucon Valley Manor, Inc. (2894).  The Order Granting Motion to Dismiss [D.I. 264], entered on March 20, 2026, dismissed the cases of debtor Whitehall Trust, Case No. 25-15241-PMM and debtor Saucon Trust, Case No. 25-15243-PMM.

[2] Debtors will seek an expedited appeal with the Third Circuit, however, granting of the request is outside Debtors' control.

"(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 568 (reversing district court's decision denying request for stay).

"'[T]he most critical factors," according to the Supreme Court, are the first two: "whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm." *Revel*, 802 F.3d at 568 (quoting <u>Nken v. Holder</u>, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009)). The movant must make a "sufficient showing" on the first two factors before the court proceeds to "balance the relative harms considering all four factors using a 'sliding scale' approach." *Revel*, 802 F.3d at 571. Under the sliding scale approach,

> in a situation where factors of irreparable harm, interests of third parties and public considerations strongly favor the moving party, an injunction might be appropriate even though plaintiffs did not demonstrate as strong a likelihood of ultimate success as would generally be required. In contrast, where the threatened irreparable injury is limited or is balanced to a substantial degree by countervailing injuries which would result to third parties, or to the public interest from the issuance of an injunction, greater significance must be placed upon the likelihood that the party will ultimately succeed on the merits of the litigation.

*Revel*, 802 F.3d at 570-571 (footnotes omitted) (internal quotation marks omitted). *See also, In re Sternitzky*, 638 B.R. 770 (Bankr. W.D. Wis. 2022) (granting conditional stay pending appeal after applying balancing test and finding that, while Debtors failed to show substantial likelihood of success, the other factors, including irreparable harm, justified the stay.)

### 1. <u>The Debtors have a Likelihood of Success on Appeal</u>

To establish a likelihood of success, the moving party must show that "there is 'a reasonable chance, or probability, of winning.'" *Revel*, 802 F.3d at 568 (in other words "significantly better than negligible but not greater than 50%"). That does not require a "more-likely-than-not showing

of success on the merits." <u>Reilly v. City of Harrisburg</u>, 858 F.3d 173, 179 & n3 (3d Cir. 2017), as amended (June 26, 2017). But it does require the moving party to "demonstrate that it can win on the merits," which involves a showing that its chances of establishing each of the elements of the claim are "significantly better than negligible." *Id.*

Here, the Debtors easily meet this test. The Court acknowledged that the proper standard for a "business trust" under Section 109 is a question of law with a "legion" of answers, some of which differ, overlap, or conflict with others. *See* Dismissal Order at 9-10. The Court has also determined that there is no binding precedent in this Circuit. *See* Dismissal Order at 11 ("Neither the Supreme Court nor the Third Circuit has squarely addressed what constitutes a 'business trust' under the Code.")  Although this Court performed a very careful and thoughtful analysis of the law on this subject, ultimately the Court applied its own definition of a business trust. *See* Dismissal Order at 18. Since other courts have reached different results as to the appropriate standard, which are laid out in this Court's opinion, it is certainly possible that the Third Circuit will adopt a different approach. Even if the Third Circuit agrees with this Court's definition of a business trust, it may well disagree with how that definition was applied to these facts.

The best example of the application of the definition to these facts is the weight that the Court placed on the fact that the Trusts have not collected rent from the Manors in five years. [3] *See* Dismissal Order at 24. While true, a business trust should not lose its character as a business trust because the financial condition of its tenant precludes its payment of rent. The Court's view on "what constitutes conducting business" was too narrow for entities experiencing financial distress. The Trusts were conducting business for years, including borrowing and repaying mortgages, engaging in loan modification negotiation, collecting rent, entering leases, undertaking audited

---

[3] Attempts to collect rent, on behalf of the Trusts, restarted pre-petition via the Receiver. Therefore, the Trusts, through the Receiver, were conducting business at the time of filing.

financials, and making improvements to the properties. Cessation of rent collection was a prudent, business decision that was necessary to save the four entities. This issue is certainly not free from doubt and presents a question where the Third Circuit may differ with this Court as to the appropriate standard and its application. These issues are issues on which the Debtors "can win on the merits" and such a win is "better than negligible." *See Reilly*, 858 F.3d at 179 & n.3.

## 2. __The Debtors will Suffer Irreparable Harm Absent a Stay Pending Appeal__

Courts in the Third Circuit look for "harm that cannot be prevented or fully rectified by a successful appeal." *See Revel*, 802 F.3d at 568 (internal citations omitted). To satisfy the second Revel factor, "the applicant must 'demonstrate that irreparable injury is likely, not merely possible, in the absence of a stay.'" *Revel,* 802 F.3d at 569 (internal alterations omitted). "To establish irreparable harm, a stay movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Id.* at 571 (internal quotation marks and citation omitted). "[A] purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement[.] But "an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business." *Minard Run Oil Co. v. United States Forest Serv*., 670 F.3d 236, 255 (3d Cir. 2011)(quoting *Vaqueria Tres Monjitas, Inc. v. Irizarry,* 587 F.3d 464, 485 (1st Cir.2009)).

Additionally, where "interests involving real property are at stake, preliminary injunctive relief can be particularly appropriate because of the unique nature of the property interest." *Minard Run*, 670 F.3d at 256 (granting stay). *See also*, *K-Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 915 (1st Cir. 1989) ("Real estate has long been thought unique, and thus, injuries to real estate interests frequently come within the ken of the chancellor.")

Here, the Trust Debtors stand to lose their real estate on which the Manor Debtors operate the residential homes for the elderly. This loss will occur through a foreclosure action that was stayed by the automatic stay of Section 362. With the dismissal of the Trust cases, the automatic stay no longer applies and the foreclosure proceedings will move forward immediately. Without the protection of the stay and ability to reorganize along with the Manor Debtors, the Lender will quickly succeed with its foreclosure efforts as the Trust Debtors presently lack the financial means to defend the foreclosure action. The "potential economic loss is so great as to threaten the existence" of the Trusts and the Manors. If the Lender proceeds with its foreclosure, it will acquire rights in reliance on the Dismissal Order and the assets of the estate will be irrevocably altered. The Debtors will lose their multimillion dollar investment and the opportunity to reorganize and continue to operate a profitable family business. The Debtors will also suffer a loss of its going-concern value, which cannot be adequately remedied even if appellants' appeal is successful.

Moreover, if this Court's order is not stayed pending appeal, and the Third Circuit disagrees with either the definition chosen by this Court or its application to the facts, then the Trust Debtors will be deprived of the opportunity to reorganize. Once the real estate is sold at a foreclosure sale, there is no way to "un-sell" it and restore the Trust Debtors to their *status quo ante*. This outcome deprives the Trust Debtors of their right to reorganize under the Bankruptcy Code. Similarly, the Manor Debtors may also be deprived of certain opportunities to reorganize because of the uncertainty of future operations.

Debtors further incorporate their Emergency Motion for Stay and Expedited Consideration and attached Exhibits, which includes the Receiver Orders. [DI 30]. Enforcement of the Receiver

Orders against the Debtors is irreparable harm, because it unnecessarily increases the cost of their obligations for no benefit.

Sufficient proof of damage to reputation and goodwill is also proof of irreparable harm. *See Bennington Foods LLC v. St. Croix Renaissance Group, LLP*, 528 F.3d 176 (3d Cir. 2008)(reversing district court and finding that plaintiff did not present sufficient evidence to warrant an injunction based on harm to its reputation because plaintiff failed to identify any contracts which it was unable to perform, any third parties with whom it suffered a loss of reputation, or any attempts—futile or otherwise—it made to fulfill contracts from other sources). *See also, Walgreen Co. v. Sara Creek Prop. Co.,* 775 F.Supp. 1192, 1197 (1991) (where exclusivity clause in lease was breached, loss of goodwill, erosion of customer base, and diminution of corporate image provided grounds for finding irreparable harm), *aff'd,* 966 F.2d 273 (7th Cir.1992); *K-Mart Corp.,* 875 F.2d at 915 (noting "harm to goodwill, like harm to reputation, is the type of harm not readily measurable or fully compensable in damages—and for that reason, more likely to be found irreparable."); *FMC Corp. v. Control Sols., Inc.,* 369 F. Supp. 2d 539, 573 (E.D. Pa. 2005)( loss of goodwill or a company asset can constitute irreparable harm if such a loss will be difficult to quantify at trial).

Debtors will suffer a loss of goodwill and reputation without a stay. These harms are not compensable by money damages in bankruptcy because once uncertainty arises as to the Debtors' ability to operate their properties and provide services to their Residents, the loss of business and employees will cause a collapse of the Debtors' businesses, rendering reorganization impossible. Foreclosure also causes instability, particularly where the Lender is a private equity firm.[4] Instability is a cause of concern for the Residents and their families as well as the Debtors'

---

[4] See Inside PE's 'Financial Gamesmanship': PE-Owned Nursing Homes Face 10 Times Greater Bankruptcy Risk, Higher Mortality - Skilled Nursing News

employees. Occupancy decreased during the foreclosure proceedings. Residents moved. Prospective clients (after internet searches) did not apply to become residents despite the Manors' outstanding reputation. Post-Petition, the Manor Debtors have been able to stabilize occupancy with the understanding that the foreclosure issues were stayed and would be resolved in a Chapter 11 plan. If the foreclosure is restarted, Residents will move. Further, Debtors' competitors took advantage of the foreclosure to lure customers, and will do so again.

### 3. The Balance of Harms Favors a Stay Pending Appeal

In balancing the harms, the Court should "weigh the likely harm to the movant (absent a stay) against the likely irreparable harm to the stay opponent(s) if the stay is granted." *In re Blockfi, Inc.,* No. AP 23-01144 (ABA), 2024 WL 358112, at *9 (Bankr. D.N.J. Jan. 30, 2024). Because the Debtors meet the first two elements for a stay pending appeal, the Court must consider whether the Lender will be harmed by a stay. It will not. Any alleged harm will be mitigated by an expedited appellate schedule. Moreover, the evidence will show that (1) taxes on the properties are being paid; (2) insurance is current on the properties; (3) the properties are being well maintained by the Manors who operate the homes; (4) there is no proof of diminution of value; and (5) adequate protection payments are being made to protect the Lender against depreciation.[5] This Court has already determined that those payments are adequate. *See, e.g.,* March 24, 2026 Hearing Held on Motion for (1) Interim and Final Orders (A) Authorizing Debtors to Use Cash Collateral of Existing Secured Party and Granting Adequate Protection for Use [DI 39]. The adequate protection payments, real estate, and lack of evidence of depreciation

---

[5] The Debtors submit that the amount of the adequate protection payment was determined by the Court based on the monthly mortgage payment for each property; however, the amount of the mortgage payments include property taxes and insurance, which the Manor Debtors have been paying separately post-petition. Accordingly, only principal and interest should be taken into account for purposes of adequate protection and whether the value of the property is being maintained post-petition.

#125543668v1

also serve as "other security" under FRCP 62. FRCP 62(b) allows a moving party seeking a stay of an order on appeal to post security, in a form other than a bond. "New Rule 62(b) permits flexibility in the type of security required to obtain a stay, which allows the Court to treat the [real estate] properties as sufficient security." *United States v. Birdsong*, No. CV-17-72-M-DWM, 2019 WL 1026277, at *2 (D. Mont. Mar. 4, 2019) (finding properties constituted security and ordering stay of foreclosure order pending appeal). See also, FRCP 62 advisory committee's note to 2018 amendments; *Deutsche Bank Nat'l Tr. Co. as Tr. for GSAA Home Equity Tr., 2006-18 v. Cornish*, 759 F. App'x 503, 509-510 (7th Cir. 2019) (determining that given the "explicit flexibility" in Rule 62(b), "continuing an existing security interest in the property that a lender required as a condition of the loan should provide adequate security in most cases" where the "property is cared for and protected."); *Petroleos de Venezuela S.A. v. MUFG Union Bank N.A.*, No. 19-CIV-10023 (KPF), 2020 WL 7711522, *2 (S.D.N.Y. Dec. 29, 2020) (same).

Conversely, the Debtors' harm is substantial and case-dispositive, including the risk of mootness on appeal. Without the conclusion of the appeal with a stay to maintain the *status quo*, the Manor Debtors' ability to reorganize will, at a minimum, be delayed by the uncertainty caused by the Lender moving forward immediately with the foreclosure. Moreover, expenses will increase exponentially to the harm of Debtors' operations. The Receiver and Lender have already indicated to the Debtors that they will immediately enforce the District Court's order, including collection of rent and payment of receiver fees. This will result in increased litigation and cost in both courts as relief from the automatic stay would be needed before the Receiver or Lender could take action with respect to property of the Manor Debtors. The foreclosure diverts Mr. Atiyeh's attention and personal funds toward the litigation instead of making contributions to a Chapter 11 Plan for the benefit of all creditors in order to retain equity interests and/or to support to the Manors' operations

(depending on the terms of the Chapter 11 plan).[6] The balance of harms substantially favors maintaining the *status quo* for a limited period to ensure the Trust Debtors do not lose important rights and assets and to advance the Debtors' cases toward a successful reorganization for the benefit of all interested parties, not only the Lender as would result from continuing the foreclosure.

### 4. The Public Interest Favors a Stay to Maintain the *Status Quo*

"Public policy strongly favors the correct application of the Bankruptcy Code, especially where property rights are at stake." *See Revel*, 802 F.3d at 573. Clarification of the term "business trust" and its application under Section 109 will promote uniformity and predictability in the administration of the Code in this Circuit. The public interest also favors reorganization pursuant to the provisions of the Bankruptcy Code for eligible debtors. Should the Trusts be determined to be eligible debtors, they should not be deprived of the right to reorganize by the foreclosure of their real property. A stay will allow for this result in the event that the Third Circuit disagrees with this Court's determined standard derived from a murky area of the law.

In addition, the public interest favors a stay of the Dismissal Order so that the automatic stay continues to apply to the Trusts while the Third Circuit considers the issue presented in this case. Such a stay will eliminate unnecessary disruption to the lives of the elderly residents in the homes that would be caused by a potentially unnecessary foreclosure sale.[7]

---

[6] Diversion of funds and the harm to the business is not speculative. Mr. Atiyeh has contributed substantial funds to the Debtors' operations, including payment of the substantial legal fees to Hangley, Aronchick, Segal, Pudlin & Schiller.

[7] By analogy, *In re Guardian Elder Care at Johnstown, LLC*, the court recognized that residential care facilities serve some of the "most at-risk individuals, for whom continuity of care is paramount." 665 B.R. 270, 279 (Bankr. W.D. Pa. 2024) (noting that disruptions in residency for these patients, due to an inflexible application of a non-residential classification related to a Section 365(d)(3) motion, could have serious consequences for public health, particularly in times of economic instability or in the event of a bankruptcy.)

WHEREFORE, for the reasons set forth herein, the Debtors meet each of the factors relevant to the imposition of a stay pending appeal and respectfully request that the Court issue such stay.

Dated:   3/21/2026                          **/s/  Michelle Lee, Esquire**

Philadelphia, Pennsylvania          **DILWORTH PAXSON LLP**
Lawrence G. McMichael
Anne M. Aaronson
Michelle V. Lee
1650 Market St., Suite 1200
Philadelphia, PA 19103
Telephone: (215) 575-7000
Facsimile: (215) 575-7200
Email: lmcmichael@dilworthlaw.com
          aaaronson@dilworthlaw.com
          mlee@dilworthlaw.com

*Counsel for the Debtors and Debtors-in-Possession*