**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTER DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| Whitehall Manor, Inc., *et al.*,[1] | : | |
| | : | Case No. 25-15245 (PMM) |
| Debtors. | : | (Jointly Administered) |
| | : | |

**MOTION OF THE UNITED STATES TRUSTEE FOR ENTRY OF AN ORDER
DIMISSING THE CASES OR IN THE ALTERNATIVE,
DIRECTING THE APPOINTMENT OF A TRUSTEE**

Andrew R. Vara, United States Trustee for Region Three and Nine (the "U.S. Trustee"),

through his counsel, files this Motion (the "Motion") for the entry of an order dismissing this case

or alternatively directing the appointment of a chapter 11 trustee.

**INTRODUCTION**

1.      Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District

Court for the Eastern District of Pennsylvania issued pursuant to 28 U.S.C. § 157(a), and

(iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this Motion.

2.      Under 28 U.S.C. § 586, the U.S. Trustee is generally charged with monitoring the

federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia

Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest

standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco

D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as

a "watchdog").  Specifically, the U.S. Trustee is charged with "monitoring the progress of cases

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Whitehall Manor, Inc., Case No. 25-15245-PMM, EIN 5606; and Saucon Valley Manor, Inc., Case No. 25-15244 (PMM), EIN 2894.

1

under title 11 and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress." 28 U.S.C. § 586(a)(3)(G).

3.      The U.S. Trustee has standing to be heard with respect to the Motion pursuant to 11 U.S.C. § 307.

### PRELIMINARY STATEMENT

4.      Due to the Debtors' continued mismanagement of their estates, "cause" exists to dismiss their chapter 11 cases pursuant to 11 U.S.C. §§ 1112(b)(4)(A), (B).  Based on the Patient Care Ombudsman Report and the monthly operating reports, the Debtors are jeopardizing the health and safety of their residents, appear to be losing money, continually pay professionals absent Court authorization, and provide misleading information in the monthly operating reports about those payments.

5.       If the Court should determine dismissal is not appropriate, the U.S. Trustee respectfully requests that the Court appoint a chapter 11 trustee pursuant to 11 U.S.C. §§ 1104(a)(1) and (2), so that a disinterested and independent fiduciary can expeditiously and efficiently preserve estate assets.

### BACKGROUND

6.      On the Petition Date, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. ECF Doc. No. 1.  The Debtors designated themselves as a health care business on their petitions. *Id*., at 1.

7.      The Debtors operate senior living facilities and provide 24-hour supervision for adults and help with the tasks of daily living, including meals and medication assistance.  *See* Declaration of Abraham Atyieh (the "Atiyeh Declaration"), *Whitehall Trust*, Case No. 25-15241-

PMM, Doc. No. 25, ¶ 18.  As of the Petition Date, the Debtors have approximately 287

employees and 231 residents between the two facilities.  *Id*., ¶ 20.  The Debtors employ five

LPNs and 1 RN.  *Id.*, ¶ 18.

8.  The Atiyeh Declaration further states that SVM generates revenue from food

preparation services to Saucon Valley Manor II LLC and Bethlehem Manor Senior Living LLC,

non-debtor entities.  Whitehall generates additional revenue from food preparation to Parkland

Manor LLC, a non-debtor entity.  *Id*., ¶ 23.

9.  The Debtors purportedly filed for bankruptcy relief  due to the rising costs from

battling the COVID-19 pandemic, including "increased labor expenses, PPE costs, reduced

census, and ongoing operational disruptions severely impacted finances . . ." *Id.,* ¶ 29.

10.  The Debtors are operating their businesses and managing their affairs as debtors

in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

11.  The United States Trustee was unable to appoint an official committee of

unsecured creditors.  *See Whitehall Manor*, Case No. 26-15245-PMM, Docket.

12.  To date, the Debtors have not filed plans of reorganization.  *Id.*

13.  The Court has not entered any order approving a post-petition retainer for any

professional nor awarded any professional fees in this case.  *See* Docket.

14.  On March 30, 2026, the Court entered a fourth interim order authorizing the

Debtors' use of cash collateral and granting adequate protection with a thirteen week budget for

the period of March 28, 2026 through June 20, 2026.  Doc. No. 53.  The budget indicates that

SVM will have negative income of (-$233,780.00) and Whitehall will have negative income of

(-$226,344.47).  *Id.*, Exhibit 1, Thirteen week budgets.

**The Patient Care Ombudsman and Report**

15.     On January 28, 2026, the Court entered an order directing the United States

Trustee to appoint a patient care ombudsman ("PCO") pursuant to 11 U.S.C. § 333. *See*

*Whitehall Trust, et. al.*, Case No. 25-15241-PMM, Doc. No. 145.

16.     On February 2, 2026, the United States Truste appointed Margaret Barajas as the

PCO. *Id.*, Doc. No. 169.

17.     On April 7, 2026, the PCO filed her first sixty-day report of her observations of

the Debtors' operations for the period of February 19, 2026 through April 2, 2026 (the "PCO

Report"). *Whitehall Manor, Inc.*, *et. al.*, Case No. 25-15245-PMM, Doc. No. 75.

18.     According to the PCO Report, the PCO or her regional and local representatives

observed serious deficiencies impacting residential care and hygiene at both premises where the

Debtors operate. *Id.*

19.     With respect to Whitehall Manor, the PCO reported that she coordinated at least

three visits to the facility. The PCO or her representatives observed evidence of an ongoing mice

infestation, call bells not being t timely answered, staff not wearing visible name badges, and one

resident complaint of missing clothing.

20.     With respect to SVM, the PCO reported that she coordinated at least five visits to

the facility. The PCO or her representatives observed evidence of a "filthy kitchen," an

unrepaired second floor ceiling leak from a faulty heating coil, fire doors improperly propped

open by fire extinguishers, and staff not wearing visible name badges, among other things. The

PA Department of Human Services had three previous inspections and found that SVM had

significant violations. As a result, the Licensing Bureau revoked SVM's certificate of

compliance and issued a First Provisional license that will expire September 26, 2026 to allow SVM to correct the violations.

**Abraham Atiyeh's Testimony at the April 1, 2026 Hearing**

21.     At the April 1, 2026 hearing on Whitehall Trust and Saucon Trusts' Motion for Stay pending appeal, Abraham Atiyeh testified that the SVM and Whitehall buildings recently had inspections and "are in excellent shape" and the Debtors "can afford to pay the rent and also pay debt." Doc. No. 68 ("Transcript"), pg. 25, ¶ 18- pg. 26, ¶ 5.

22.     Atiyeh further testified that the thirteen-week budget attached to the fourth interim cash collateral order (Doc. No. 53) is correct; SVM and Whitehall will have negative cash flow over the thirteen-week period identified in the fourth interim cash collateral order. Doc. No. 53; Transcript, pg. 41, ¶¶ 10-21; pg. 42, ¶¶ 8-14.

**Debtors' Monthly Operating Reports**

23.     On February 20, 2026, SVM filed the monthly operating report ("MOR") for January 2026. *See In re Whitehall Trust, et. al.,* Case No. 25-15241-PMM, Doc. No. 217. The January 2026 MOR was signed under the penalty of perjury by Atiyeh. *Id.* SVM reported that it had $434,339 in cash at the end of the month (Part 1.d.), generated net profit of $294,454 (Part 4.k.), had $94,909 in post-petition payables (Part 2.f), and did not pay any professional fees & expenses (Part 5.a.). On Part 7 of the Debtor questionnaire, the Debtor answered "N/A" to "were all payments made to or on behalf of professionals approved by the Court?" (Part 7.h.). The January 2026 statement of operations indicates SVM paid $1,912.50 in "Legal/Professional Fees." Neither the attached bank statements nor check registers reflect a payment of any legal or professional fees.

24.     On March 20, 2026, SVM filed the February 2026 MOR.  *Whitehall Manor*, Case No. 25-15245-PMM, Doc. No. 29.  The February 2026 MOR was signed under penalty of perjury by Atiyeh.  *Id*.  In the February 2026 MOR, SVM reported that it had $541,452 in its bank account at the end of the month (Part 1.d.), generated net profit of $102,566 (Part 4.k.), and had $180,302 in unpaid post-petition payables (Part 2.f), and paid Lukens & Wolf, LLC $3,750 (Part 5.a.).  On Part 7 of the Debtor questionnaire, the Debtor answered "N/A" to "were all payments made to or on behalf of professionals approved by the Court?" (Part 7.h.).  The February 2026 statement of operations indicates SVM paid $2,337.50 in "Legal/Professional Fees."  Notwithstanding, SVM issued a $5,266.96 check #2137 written on February 20, 2026 to Dilworth Paxton LLP, and a $3,750 check #2153 written on February 26, 2026 to Lukens & Wolf, LLC.  *Id*.

25.     On February 20, 2026, Whitehall filed its January 2026 MOR.  *Whitehall Trust*, Case No. 25-15241-PMM, Doc. No. 216.  The January 2026 MOR was signed by Atiyeh under the penalty of perjury.  *Id.*  Whitehall reported that it had $26,458 in its account at the end of the month (Part 1.d.), generated $56,523 in net profit (Part 4.k.), and had $87,726 in unpaid post-petition payables (Part 2.f.).  *Id*.  On Part 7 of the Debtor questionnaire, the Debtor answered "N/A" to "were all payments made to or on behalf of professionals approved by the Court?" (Part 7.h.).  The January 2026 statement of operations indicates Whitehall paid $1,912.50 in "Legal/Professional Fees.  *Id.*

26.     On March 20, 2026, Whitehall filed its February 2026 MOR.  *Whitehall Manor*, Case No. 25-15245-PMM, Doc. 28.  The February 2026 report was signed by Atiyeh under the penalty of perjury.  *Id.*  Whitehall reported $400,907 in its accounts at the end of the month (Part

1.d.), generated $93,286 in net profit (Part 4.k.), and had $78, 290 in unpaid post-petition

payables (Part 2.f.).  The February 2026 statement of operations indicates Whitehall paid

$4,767.50 in "Legal/Professional Fees.  *Id.*  On Part 7 of the Debtor questionnaire, the Debtor

answered "N/A" to "were all payments made to or on behalf of professionals approved by the

Court?" (Part 7.h.).  Notably, the check register includes an entry of a $2,300 payment made on

February 20, 2026 to Hoegan & Associates, P.C.  *Id.*

## ARGUMENT

### A.      There is Cause to Dismiss this Case under 11 U.S.C. § 1112(b).

The Court should dismiss the case. .  Section 1112(b) provides, in part, that:

> (1)      Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1) (2010).

Section 1112(b)(4) lists provides fifteen examples of cause, including:

> (A)      substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; [and]
>
> (B)      gross mismanagement of the estate.

11 U.S.C. § 1112(b)(4).

Through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.

L. No. 109-8, 119 Stat. 23 (2005), Congress eliminated this Court's discretion that was

previously reflected in the appearance of the permissive word "may" in to 11 U.S.C. § 1112(b)

and, through substitution of the mandatory word "shall" for "may," directed this Court to convert

7

or dismiss the case, "whichever is in the best interests of the creditors and the estate," if "cause" is established. 7 COLLIER ON BANKRUPTCY § 1112.04(1) (15th ed. rev. 2005) (". . . as amended in 2005, section 1112(b) circumscribes the court's discretion by directing certain instances in which the court must, and must not, convert or dismiss the case."); *cf. Association of Civilian Technicians v. FLRA*, 22 F.3d 1150, 1153 (D.C. Cir. 1994) ("The word 'shall' generally indicates command that admits of no discretion on the part of the person instructed to carry out the directive.").

> **1.    There are Continuing Losses to the Estate and No Likelihood of Rehabilitation.**

> **a.    Continuing Losses to the Estate.**

The purpose of 11 U.S.C. § 1112(b)(4)(A) is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995) (quoted in *Loop Corp. v. United States Trustee (In re Loop Corp.)*, 379 F.3d 511, 516 (8th Cir. 2004)). "Substantial or continuing loss to or diminution of the estate" is established where a debtor has continuing, negative cash flow post-petition. *See Loop Corp.*, 379 F.3d at 515-16.

Here, there are continuing losses to the estate. The PCO Report is evidence of the Debtors' inability to maintain the buildings and comply with PA Law, risking the health and safety of their residents. The MORs reveal that the Debtors have significant unpaid post-petition payables at the end of February 2026. *See* Whitehall Manor, Doc. Nos. 28, 29. Atiyeh testified that both SVM and Whitehall will have negative cashflow in excess of (-$220,000) per debtor at the end of the proposed thirteen-week budget. In addition, it appears that the Debtors are eating into their cash position to fund operations and the prosecution of their bankruptcy cases.

8

> **b.**  **No Likelihood of Rehabilitation.**

"Rehabilitation," as the term is used in 11 U.S.C. § 1112(b)(4)(A), means "to put back in good condition; re-establish on a sound, firm basis." 5 COLLIER ON BANKRUPTCY § 1112.03(2) (15th ed. 1980) (quoted in *In re L.S. Good & Co.*, 8 B.R. 315, 317 (Bankr. N.D. W.Va. 1980)).  To be clear, "rehabilitation" does not include or mean the ability to confirm a liquidating plan.

Here, there is no likelihood of rehabilitation because the Debtors do not generate sufficient funds or have income available to fund a plan of reorganization. See Doc. Nos. 28, 29. Further, Atyieh admits that both Debtors will generate negative income over the next 13 weeks while in chapter 11 despite attempting to fill more beds and reduce overhead.  Since the outset of these cases, the Debtors' reorganization strategy included a global resolution with their landlords' mortgagor, Lehigh Valley I, LLC.  It appears that the Debtors, their landlords and mortgagor have brought this three-party dispute into bankruptcy court in order to address the threat of foreclosure.  The Debtors have not proposed any alternative means by which to restructure their debt or obtain funding and therefore, appear to be unable to file or confirm a plan.  Accordingly, there is no likelihood of rehabilitation.  11 U.S.C. § 1112(b)(4)(A).

> **2.**  **Gross Mismanagement**

Cause, as defined in Bankruptcy Code section 1112(b), includes the "gross mismanagement of the estate."  11 U.S.C. § 1112(b)(4)(B).  "Section 1112(b)(4)(B) focuses on the conduct of the *estate's* affairs . . . and requires that the mismanagement be gross in character,

meaning that it is "'glaringly noticeable usually because of inexcusable badness or objectionableness.'" *In re Stream TV Networks, Inc. et al*, Case No. 23-10763 (MDC), 2024 Bankr. LEXIS 25, at *42 (Bankr. E.D. Pa. January 5, 2024) (citations omitted) (emphasis in the original).

Here, the PCO Report evidencing the true condition of the facilities, Atiyeh's misrepresentation of the physical condition of the facilities to the Court at the April 1, 2026 hearing, the unauthorized payments to professionals and the inaccurate MORs all constitute "gross mismanagement" warranting dismissal of the case.

**B.**     **There are No Unusual Circumstances Establishing that Dismissal is not in the Best Interests of Creditors and the Estate.**

Under section 1112(b)(2), after the movant shows cause, the burden shifts to the debtor and other parties in interest to show that there are "unusual circumstances establishing that conversion or dismissal is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(2); *see also In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007) (after the movant shows cause, the burden shifts to the debtor to prove that there are unusual circumstances under section 1112(b)(2)).

Section 1112(b)(2) provides that:

(2)     The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that --

(A)     there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

10

(B)     the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--

    (i)     for which there exists a reasonable justification for the act or omission; and

    (ii)     that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

There are no unusual circumstances in this case that would establish that dismissal is not in the best interests of the creditors and the estates. There is also no likelihood of plan confirmation within a reasonable time.

**C.     Dismissal is in the Best Interests of Creditors and the Estates.**

Under 11 U.S.C. § 1112(b), the Court, in its discretion, must determine whether dismissal or conversion is in "the best interest of creditors and the estate." 11 U.S.C. § 1112(b)(1). *See also In re Gonic Realty Trust*, 909 F.2d 624, 626-27 (1st Cir. 1990) (court has broad discretion to convert or dismiss a chapter 11 case). Dismissal of the case would allow the State and creditors to pursue their rights outside of Bankruptcy Court.

**D.     Appointment of a Trustee is Mandated if the Court Finds Cause under 11 U.S.C. § 1104(a).**

In the alternative, the Court may find cause under 11 U.S.C. § 1104(a) to appoint a Chapter 11 trustee. Title 11 U.S.C. § 1104(a) sets forth two grounds and provides as follows:

(a)     At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—

    (1)     for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

11

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a)(1) and (2).

In chapter 11 cases, Congress provided but one way to replace a debtor's management's control of the case with an independent fiduciary: appointment of a trustee pursuant to 11 U.S.C. § 1104(a). The usual presumption in favor of allowing a debtor's management to remain in the case vanishes completely when management does not or cannot perform its fiduciary duties. *See Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 355 (1985) ("[T]he willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'") (*quoting Wolf v. Weinstein*, 372 U.S. 633, 651 (1963)).

The use of the word "shall" in section 1104(a) mandates the appointment of a trustee when "cause" exists. *See Escoe v. Zerbst*, 295 U.S. 490, 493 (1935) ("shall" is the language of command; its use in a statute indicates congressional intent that the statute be mandatory). The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee. And if the debtor-in-possession defaults in this respect, then "the stewardship of the reorganization effort must be turned over to an independent trustee." *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 474 (3rd Cir. 2000); *accord Oklahoma Refining Company*, 838 F.2d 1133, 1136 (10th Cir.1988).

Section 1104(a)(1) addresses management's pre- and post-petition misdeeds or mismanagement, while subsection (2) provides the court with "particularly wide discretion" to appoint a trustee even absent wrongdoing or mismanagement. *See In re Bellevue Place Assocs.*, 171 B.R. 615, 623 (N.D. Ill. 1994). Where the court finds either that cause exists or that appointment is in the interest of the parties, an order for the appointment of a trustee is mandatory. *Official Comm. Of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.)*, 285 B.R. 148, 158 (Bankr. D. Del. 2002).

The categories enumerated in 11 U.S.C. § 1104(a)(1) "cover a wide range of conduct" and, thus, are best described as illustrative, rather than exclusive. *In re Marvel Entertainment Corp.*, 140 F.3d 463, 472 (3d Cir. 1998) (internal citations omitted). Fraud, dishonesty, incompetence, and gross mismanagement of a debtor's business affairs are all grounds for appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1). *See, e.g., In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1989); *In re Colby Construction Corp.*, 51 B.R. 113, 116-118 (Bankr. S.D.N.Y. 1985). The determination of whether cause exists must be taken on a case by case basis, taking into account all relevant factors. *Sharon Steel*, 871 F.2d at 1225.

There are additional bases for the appointment of a trustee under 11 U.S.C. § 1104(a)(2). The Debtors' assets may include claims and causes of action against the current management and insiders of the Debtors; current management cannot be expected to exercise their fiduciary duty to the Debtors' creditors to investigate and prosecute claims against themselves. The "appointment [of a trustee] is in the interests of creditors" under 11 U.S.C. § 1104(a)(2), as their hopes for a recovery on account of creditor claims are tied to the impartial investigation and prosecution of claims and causes of action. *See Manufacturers and Traders Trust Co. v.*

13

*Morningstar Marketplace, Ltd. (In re Morningstar Marketplace, Ltd.)*, 544 B.R. 297, 305

(Bankr. M.D. Pa. 2016) ("A court is more likely to appoint a trustee under § 1104(a)(2) when

reorganization is not possible, and a Debtor's principal may be motivated to protect his own

interests rather than the interests of creditors.") (internal citation omitted).

In these cases, a Chapter 11 trustee, if appointed, would take immediate action to address

the serious operational defects while presumably continuing the facilities' operations and look

for potential recoveries.  However, it is unclear whether continued operations are sustainable and

whether there will be a meaningful return to creditors given the conditions identified in the PCO

Report and financial reporting.

WHEREFORE the U.S. Trustee requests that this Court enter an order (i) directing the

appointment of a trustee or, alternatively, (ii) dismissing the chapter 11 cases o

Dated: April 10, 2026          Respectfully submitted,
Newark, New Jersey

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 and 9**

By: */s/ Rachel Wolf*
Rachel Wolf
Trial Attorney
Office of the United States Trustee
One Newark Center, Suite 2100
Newark, New Jersey
Tel. (973) 345-3014
Rachel.Wolf@usdoj.gov

14