IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| Whitehall Manor, Inc., et al., | § § | Case No. 25-15245 (PMM) |
| *Debtors*. | § § § | Jointly Administered |

## <u>ORDER</u>

AND NOW, upon consideration of the joint motion of Secured Creditor Lehigh Valley 1, LLC and Receiver Duane Morris LLP through Erin Duffy, Esquire, for entry of an Order (1) compelling the Manor Debtors to assume or reject their Leases pursuant to 11 U.S.C. §365(d)(2) promptly, (2) establishing the cure amount, and (3) in the alternative, for relief from the automatic stay, doc. #56 (the "Motion"), it is hereby **ORDERED** that:

1. The Motion is **DENIED**.*

Date: May 15, 2026

Hon. Patricia M. Mayer,
United States Bankruptcy Judge

\*   \*   \*

On March 19, 2026, Whitehall Trust and Saucon Trust (together, the "Trusts"), two of the four above-captioned Debtors, were dismissed from these jointly administered bankruptcies. Doc. #264 (Bankr. E.D. Pa. No. 25-15241) (the "Dismissal Order"). Their dismissals were later stayed on April 2, 2026. Doc. #274 (Bankr. E.D. Pa. No. 25-15241) (the "Stay Order"). The other two Debtors are Whitehall Manor, Inc., and Saucon Valley Manor, Inc., (together, the "Manors"). They operate personal care homes located at 1177 Sixth Street, Unit 1, Whitehall, Pennsylvania and 1050 Main Street, Unit 1, Hellertown, Pennsylvania (together, the "Manor Properties"). The Trusts leased said Properties to the Manors. Lehigh Valley 1, LLC ("Lehigh") holds mortgages on the Manor Properties and security interests in, *inter alia*, the Manors' receivables.

In February of 2021, the Manors stopped paying the full amount of rent due under their leases with the Trusts (the "Leases"). Thereafter, the Trusts were unable to voluntarily service their mortgages. Accordingly, in June of 2024, Lehigh filed foreclosure actions against the Trusts in the United States District Court for the Eastern District of Pennsylvania. See (E.D. Pa. No. 24-cv-02627) (Whitehall Foreclosure Action); (E.D. Pa. No. 24-cv-2709) (Saucon Foreclosure Action). These foreclosure actions were consolidated on March 17, 2025. Doc. #52 (24-cv-2709). On May 2, 2025, the Honorable Catherine Henry entered an Order appointing Duane Morris LLP through Erin Duffy, Esquire (the "Receiver") to receive the Manor Properties on Lehigh's behalf. Doc. #65 (24-cv-02627) (the "Receivership Order"). On December 19, 2026, Judge Henry entered an Order directing that amendments made to the Leases in 2023 were null, void, and of no legal effect. Doc. #164 (24-cv-02627). Accordingly, the Leases expired by their terms well before the Debtors filed for bankruptcy on December 26, 2025. See e.g., LVx-1 at 8, §2.02; id. at 30, 40; LVx-2 at 1, 9, §20(a); id. at 8, §19; id. at 34–35, 37–38.

1

* * *

Principally, Lehigh and the Receiver (the "Movants") argue that, because the Leases expired by their terms pre-petition, the Leases are not assumable or rejectable under 11 U.S.C. §§365(d)(2) or 1123(b)(2). Therefore, the Movants contend that they are entitled to relief from the automatic stay to "take possession of the [Manor Properties] and evict the Manor Debtors and bring in a new, qualified operator[.]" Mot. at 30. Alternatively, if the Court finds that the Leases are "unexpired," then the Movants contend that the equities weigh in favor of the Court compelling the Manors to promptly assume or reject the Leases under §365(d)(2). In that event, the Movants urge this Court to fix the cure amount at roughly eight million dollars for each of the Manors, consistent with the proofs of claim filed by the Receiver on the Trusts' behalf.[1] Should the Court compel the Manors to promptly assume or reject the Leases, the Movants request prospective stay relief to take possession of the properties if the Manors decide to reject the Leases.

Critically, the Movants contend that the Receivership Order—in tandem with the Dismissal Order—furnishes the Receiver with direct standing to assert the Trusts' interests in all the relief sought. For its part, Lehigh is said to have standing under §365(d)(2) given Lehigh's security interests in the rent due under the Leases. Less clear is on what basis Lehigh asserts "standing" to evict the Manors under §362(d)(1). Failing all that, the Movants urge the Court to either narrow the scope of the Stay Order or invoke 11 U.S.C. §105(a) as a means of conferring upon the Movants derivative standing to pursue such relief.

* * *

---

[1] Apparently, the Receiver filed these proofs of claim in the interregnum between entries of the Dismissal and Stay Orders. See doc. #44 (25-15245).

In their papers, the Manors submit that Lehigh lacks standing under §365(d)(2) because Lehigh is not a party to the Leases. Similarly, the Manors argue that the Receiver lacks standing under §365(d)(2) because she was "not appointed to exercise the Trusts' business judgment but is acting in Lehigh's interest[.]" Resp. at 9. Regardless, the Manors suggest that the Receiver is effectively estopped from moving under §365(d)(2) by virtue of the Trusts' bankruptcies. See id. ¶¶ 12, 13. See also id. at 16 ("The Receiver's pursuit of rent payments . . . is stayed in these cases[.]"). At the April 21, 2026, hearing (the "Hearing"), the Manors clarified that they were grounding the latter argument in 11 U.S.C. §543. Even if the Movants can invoke §365(d)(2), the Manors believe compulsion thereunder is unwarranted because the equites tip in favor of allowing the Manors to wait and assume or reject the Leases in their Chapter 11 plans.

The Manors also suggested at the Hearing that §543 effectively deprives the Receiver of "standing" under §362(d)(1), at least insofar as the Receiver seeks to take possession of the Manor Properties and evict the Manors. See Hr'g Tr. at 66–74. Likewise, the Manors contend that Lehigh lacks standing to evict the Manors under §362(d)(1) because, again, Lehigh is not a party to the Leases. See id. at 66; Resp. at 29. In any event, the Manors submit that there is no cause for a lift-stay. Although they concede that the Leases expired pre-petition, the Manors emphasize the Debtors' longstanding, amicable, landlord-tenant relationship. And the Manors claim they performed post-default by covering components (e.g., maintenance costs) of the rent. (For this reason, the Manors contend that any cure amount should be fixed at less than half what the Movants allege.) The Manors urge the Court to credit this purported course of dealing as an equitable basis for adjudging the Leases "unexpired" within the meaning of §365.

* * *

The Motion presents many issues. Among these are the threshold questions of: (A) whether the Stay Order reinstated the status quo ante; (B) whether the Movants have standing under 11 U.S.C. §365(d)(2); (C) whether the Movants can pursue the relief they request under 11 U.S.C. §362(d)(1); and (D) whether the Movants should be afforded derivative standing under 11 U.S.C. §105(a). Only the first question is answerable in the affirmative.

* * *

A stay pending appeal "suspend[s] judicial alteration of the status quo,'" or "the state of affairs before the . . . order was entered." Nken v. Holder, 556 U.S. 418, 429 (2009) (alteration in original) (quoting Ohio Citizens for Responsible Energy, Inc. v. NRC, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers)). See also Nken, 556 U.S. at 428–29 (a stay "temporarily suspend[s] the source of authority to act—the order or judgment in question[.]"). Accord Roe by & through Roe v. Johnston, --- F.4th ----, 2026 WL 1143531, at *2 (9th Cir. Apr. 28, 2026); Kansas v. United States, 124 F.4th 529, 532 (8th Cir. 2024); Texas All. for Retired Americans v. Hughs, 976 F.3d 564, 566 (5th Cir. 2020). Contra Porter v. Pennsylvania Dep't of Corrs., 974 F.3d 431, 439 (3d Cir. 2020) (death sentence did not constitute status quo despite stay of order vacating it).

The status quo rule generally holds where, as here, a stay was granted under Federal Rule of Bankruptcy Procedure 8007(a)(1)(A).[2] E.g., Int'l Petroleum Prods. & Additives Co., Inc. v. Black Gold S.A.R.L., 115 F.4th 1202, 1213 (9th Cir. 2024) ("For the losing party, a stay under Rule 8007 of an order pending appeal ensures that the estate and the status quo will be preserved in the event that the order is later reversed. (citation modified)); Lardas v. Grcic, 847 F.3d 561,

---

[2]     The Motion for Stay did not specifically invoke Rule 8007(a)(1)(A). See doc. #30 ¶¶ 17–18 (25-15245). Neither did the Stay Order. However, the Court construed the Motion for Stay on that basis.

567 (7th Cir. 2017) ("[I]f [Appellant] wanted to seek judicial review of the sale order, he should have moved for a stay pursuant to Federal Rule of Bankruptcy Procedure 8007(a)(1)(A), thereby preserving the status quo."); Collier on Bankruptcy ¶ 8007.01 (16th 2026) ("Once a bankruptcy court order, judgment, or decree has been entered . . . the losing party is permitted to seek a stay of the judgment, order, or decree so that the status quo pending an appeal is maintained[.]"). Cf. In re City of Chester, Pennsylvania, 2026 WL 607528, at *8 (E.D. Pa. Mar. 3, 2026) (explaining that, when applying the first of the Nken/In re Revel AC, Inc., 802 F.3d 558 (3d Cir. 2015) factors, "[t]he question is whether the movant has . . . raised serious legal questions warranting preservation of the status quo."); In re Est. of Taplin, 2022 WL 2714513, at *2 (Bankr. E.D. Cal. July 11, 2022) ("In general, a court from which an appeal is taken may not alter the status quo. Rather, the court is limited to activity that preserves the status quo.").

That said, the status quo metric can be tricky "because there is no settled way of defining 'the status quo.'" United States v. Texas, 144 S. Ct. 797, 798 n.1 (2024) (Barrett, J.) (mem.). This conundrum is exemplified by Porter, where the Third Circuit seemed to chisel out an exception to Nken. But this exception, whatever its parameters, is probably best understood as limited in application to the unique circumstances of that case.[3] Accordingly, the status quo ante prevails:

---

[3]    In Porter, vacatur of Porter's Pennsylvania death sentence was stayed pending his and the Commonwealth's appeals, which were held in abeyance while another of Porter's post-sentencing petitions worked its way through the state courts. Porter, 974 F.3d at 435. Years later, Porter sued the Department of Corrections, alleging that it violated his constitutional rights by confining him to death row while the death sentence appeals remained in abeyance. Id. at 436. Summary judgment was granted to the Department of Corrections, in part because the magistrate judge relied on Nken in deciding that Porter's death sentence formed an active part of the status quo pending appeal. Id. at 436–39. A split panel disagreed. The majority reasoned that, under "Williams," Porter's procedural due process rights—regarding the proper mode of his confinement—attached once his sentence was vacated, stay notwithstanding, even though vacaturs of the Williams plaintiffs' death sentences were not stayed. Id. at 439 (citing Williams v. Secretary Pennsylvania Dep't of Corrs., 848 F.3d 549, 553 n.4 (3d Cir. 2017)).

    Thus, the Porter majority discounted Nken. Id. ("We are unconvinced by the Magistrate Judge's reliance on the Supreme Court's articulation of the legal impact of a stay in Nken[.]"). "That the order granting Porter vacatur and a resentencing hearing is stayed does not mean that the order has no legal import or that Porter currently has a viable death sentence. Porter, like the Williams plaintiffs, is in limbo: he may not be resentenced until his appeals are

the Trusts remain "SARE" debtors in possession while their dismissals are on appeal.  See Doc. #144 (25-15241) (determining that property of the Trusts' estates is single asset real estate).  This means that the Trusts retain the rights *and responsibilities* they had on March 18, 2026.  The status quo also means that the Manor Properties remain property of the Trusts' estates, subject to the protection of the automatic stay.  See In re Addison, 667 B.R. 94, 101 (Bankr. D.S.C. 2025) ("Granting the Stay Motion [of a dismissed Chapter 13 debtor] would re-impose an automatic stay, forcing creditors to cease any [collection] actions commenced post-dismissal and wait until after a final decision on the appeal is issued to resume pursuing their rights.").

*   *   *

Chapter 11 debtors may assume or reject "unexpired" leases of residential real property "at any time before the confirmation of a plan[.]"  11 U.S.C. §365(d)(2).  Accord In re Memory Lane of Bremen, LLC, 535 B.R. 901, 905 (Bankr. N.D. Ga. 2015).  Leases of property used to operate senior living facilities constitute leases of residential real property.  Id. (citing cases).  See also doc. #246, at 4 (25-15241) (explaining that senior living facilities "do[] not meet the definition of 'nonresidential real property' specified in §365(d)(3)[.]" (citing In re Guardian Elder Care at Johnstown, LLC, 665 B.R. 270, 272 (Bankr. W.D. Pa. 2024)).  However, "on the request of any *party to*" an unexpired lease of residential real property, the court may order the debtor(s)-in-possession "to determine within a specified period of time whether to assume or reject such . . . lease."  11 U.S.C. §365(d)(2) (emphasis added).  See also Memory Lane, 535 B.R. at 905 ("When

---

resolved."  Id.  This occasioned dissent.  Compare id. at 455 (Porter, J., concurring in part and dissenting in part) ("The majority's assertion that the habeas court's stay of the vacatur order accomplished nothing, and that Porter's death sentence was actually vacated, is unprecedented and flies directly in the face of Nken.") and id. n.4 ("The majority's unconventional stay doctrine also threatens to destabilize the appellate process and our local practice." (pointing, for example, to 11 U.S.C. §362)) with id. at 439 n.3 (Greenway, Jr., J.) ("The stay certainly has legal effect: as a result of the stay, Porter cannot be resentenced. But the stay does not mean that Porter, *for purposes of his procedural due process rights*, is identical to other death row inmates who have never received any relief[.]" (emphasis added)).

determining whether to compel . . . a bankruptcy court should ensure that assumption or rejection occurs within a reasonable time[.]" (quotations omitted)).

The Manors are correct that Lehigh is not a "party to" the Leases. Therefore, Lehigh lacks standing under §365(d)(2). In re Riverside Nursing Home, 43 B.R. 682, 684 (Bankr. S.D.N.Y. 1984) (assignee of right to receive rent from debtor lacked standing under §365(d)(2) because only the assignor—*i.e.*, the original lessor—had a sufficiently close nexus with the lease agreement to qualify as a party thereto). On the other hand, the Manors baldly suggest that the same can be said of the Receiver because she was appointed for Lehigh's benefit. This is unpersuasive. Judge Henry's Receivership Order provides the Receiver with a comprehensive suite of powers and duties. These include the power to: (1) "enter and take immediate possession of" the Manor Properties; (2) "commence, prosecute, continue or defend actions at law or in equity (in [the Receiver's] own name *or in the names of* [the Trusts]) that the Receiver deems necessary to . . . collect the rents, or to evict or eject any tenants or occupants in accordance with applicable state laws"; and (3) "make, enter into, enforce, terminate, modify or accept a surrender of any of the Leases[.]" Doc. #65 (24-cv-02627) ¶ 6(a), (e), (j) (emphasis added). Essentially then, as the Manors concede, the Receiver stands in the shoes of the Trusts under non-bankruptcy law. Hr'g Tr. at 69. Yet the Trusts also retain reservoirs of independent agency—as evidenced by their decisions to file for bankruptcy shortly after being sanctioned by Judge Henry for obstructing the Receiver's efforts at rent collection in the foreclosure action (efforts which the Trusts now seek to co-opt on appeal). So, it seems both the Receiver and the Trusts are parties to the Leases.

Thus, if the Leases are "unexpired" within the meaning of §365, nothing in that provision would deprive the Receiver of standing to request prompt rejection or assumption of the Leases. However, the Manors are also correct that the Receiver is currently estopped from making such a

request.  This is true because the Receiver qualifies as a "custodian" obligated to turn over—and refrain from administering—property of the Trusts' or their estates.  11 U.S.C. §§101(11)(A), 543(a)–(b).  Any unexpired leases to which the Trusts are parties will remain property of their estates pending their appeals of the Dismissal Order.  See In re Rickel Home Centers, Inc., 209 F.3d 291, 300 (3d Cir. 2000) ("Unexpired leases, like executory contracts, are included in the definition of 'property of the estate' under [11 U.S.C. §541].").

Consequently, although no order of this Court has deprived the Receiver of its due authorization to act in the Trusts' stead under nonbankruptcy law, her ability to do so was largely short-circuited by the Trusts' bankruptcies and then again by the Stay Order temporarily reinstating them.  See doc. #65 (24-cv-02627) ¶ 20(b) (directing that, if the Trusts file for bankruptcy, the Receiver must turn over their property and otherwise comply with §543, unless Lehigh promptly moves under §§362(d) and/or 543(d)).  Of course, if the Leases are not unexpired within the meaning of §365, there is nothing for the Court to compel the Manors to accept or reject.  In re Stoltz, 197 F.3d 625, 629 (2d Cir. 1999) ("Only an 'unexpired' lease may be assumed."); In re Good Works Hous. LLC, --- B.R. ----, 2026 WL 710743, at *3 (Bankr. E.D. Pa. Mar. 13, 2026) ("If [a lease of personal property] is not unexpired, § 365 of the Bankruptcy Code simply does not apply."); In re Burch, 401 B.R. 153, 157 (Bankr. E.D. Pa. 2008) ("Where a lease is expired at the time of bankruptcy filing, there is nothing for the debtor to assume[.]").  Accordingly, there is nothing for the Court to do with the §365(d)(2) slice of the Motion, other than deny it.

* * *

The Court is unaware of binding law addressing whether a lease of residential real property that expired by its terms pre-petition nonetheless qualifies as "unexpired" under §365.  In some

jurisdictions, the answer may depend on whether a holdover tenant *qua* debtor retained possessory

rights to the leasehold under applicable state law when the debtor filed for bankruptcy.  This has

been said to govern whether a lease that was "terminated" pre-petition "expired" per §365, which

"cannot occur until all the essential procedural steps [necessary to dispossess the tenant under state

law] have actually been taken."  E.g., Robinson v. Chicago Hous. Auth., 54 F.3d 316, 321 (7th

Cir. 1995); Stoltz, 197 F.3d at 631 (holding that, under Vermont law, although a landlord had

begun action to legally terminate a lease—which had not expired by its terms—the lease was

unexpired under §365 because no writ of possession had issued pre-petition).  It has also been said

that, for the purposes of §365, the concepts of expiration and termination overlap; but it does not

necessarily follow that, for the same purposes, a debtor retains any assumable possessory rights in

a lease that expired by its terms pre-petition.[4]

Another view (probably the better one) is that the plain meaning of the terms "expired" and

"terminated" are not interchangeable under §365.  E.g., In re Morgan, 181 B.R. 579, 584 (Bankr.

N.D. Ala. 1994) ("In common parlance, and when used as terms of art . . . the word 'expired'

denotes the natural or inevitable end to a contract or lease by lapse of time, while the word

'terminated' denotes the unnatural or premature end to a contract or lease as the result of breach

or forfeiture.").  Accord In re DiCamillo, 206 B.R. 64, 69 (Bankr. D.N.J. 1997).  Indeed, when

Pennsylvania law applies, this distinction seems to hold: a lease expires (*i.e.*, is not "unexpired"

---

[4]     In Robinson, the Court of Appeals seemed to hold that a lease properly (*i.e.*, fully) terminated at state (*i.e.*, Illinois) law was no less "expired" than one whose stated terms had run:

> [B]ankruptcy law draws no meaningful distinction between "expired" and "terminated" residential leases and does not provide greater federal protection for lessees under residential leases, the stated terms of which have not run, even though they have been *otherwise terminated*.  Instead[,] the federal law allowing "unexpired" leases to be assumed calls for a determination whether a lease has ended under state law.

See Robinson, 54 F.3d at 320 (emphasis added).

within the meaning of §365) when it comes to a natural end according to its express terms. In re Turner, 326 B.R. 563, 575–76, 78 (Bankr. W.D. Pa. 2005). Moreover, "a mere possessory interest . . . in an expired lease at the time of filing is not enough to sustain the protections of the automatic stay." Id. at 573 (citing In re Hill, 307 B.R. 821 (Bankr. W.D. Pa. 2004) and In re Blaylock, 301 B.R. 443 (Bankr. E.D. Pa. 2003)). Accord Burch, 401 B.R. at 157 ("Absent the ability to assume the Lease, the Debtor merely has a possessory interest in the Lease which, while property of the estate subject to the automatic stay, is protected for a limited time only.").

As noted above, no one disputes here that the Leases expired by their terms pre-petition. See e.g., Resp. at 30 ("The parties continue in a course of performance that indicates their Leases have not *terminated*, though their stated terms have passed." (emphasis added)).[5] Nor has it been argued that the Movants are not "parties in interest" capable of requesting relief from the automatic stay under §362(d)(1). In this Circuit, such party-in-interest status is interpreted broadly "to include 'anyone who has a legally protected interest that could be affected by a bankruptcy proceeding.'" In re Potter, 2024 WL 3177775, at *3 (3d Cir. June 26, 2024) (quoting In re Global Indus. Techs., Inc., 645 F.3d 201, 210-11 (3d Cir. 2011)).

That certainly applies to the Trusts. Were they moving for a lift-stay, the Court would likely have little choice but to grant it. See Turner, 326 B.R. at 573. By extension, the Receiver

---

[5]     For this proposition the Manors rely on In re Schnur Enterprises, Inc., 42 B.R. 202, 205 (Bankr. W.D. Pa. 1984) ("[T]echnical compliance with contractual provisions can be waived by the conduct of the parties."). But that case is readily distinguishable. Unlike here, the commercial lease at issue there did not expire by its terms pre-petition. Id. at 203. Furthermore, by all indications, the Schnur Enterprises debtor continued paying rent pursuant to the terms of the lease until its expiry. Clearly, that is not the case here. At best, the Manors have established that they were partially performing under the pre-2023 Lease terms. Moreover, the Schnur Enterprises debtor's noncompliance was excused because the lessor's proposed renewal terms were onerous. Id. at 206. Here, the since-voided renewal terms agreed to by the Debtors in 2023 were onerous. These amendments were "effected" the day after the mortgages were assigned to Lehigh's parent. There can be little doubt that the purpose of these amendments was to starve the Trusts of income pledged to the mortgagee. This is the only course of dealing in evidence. And the Court has no appetite to credit such dealing as an equitable basis for extending the Lease terms beyond the petition date.

also has a compelling case for relief under §362(d)(1).  Except she currently faces a similar impediment to the one presented by §365.  Namely, the admixture of §543 and the Stay Order, whereby the Manor Properties are off limits to the Receiver while they remain property of the Trusts' estates.  At least in this practical sense, the Receiver lacks standing for relief from the automatic stay because she cannot accomplish what she seeks permission for in the Motion—*i.e.*, taking possession of the Manor Properties and evicting the Manors therefrom.  Neither, it seems, can Lehigh, who cites no authority for the proposition that Pennsylvania law allows a mortgagee to evict a mortgagor's holdover tenant because the mortgagee has a security interest in rents owed by the tenant.  Instead, Lehigh cites a line of cases where relief was granted to Pennsylvania *landlords* whose tenants' leases had either fully terminated or expired by their terms pre-petition.  See Turner, 326 B.R. at 578; Burch, 401 B.R. at 160.  Accordingly, the Movants have failed to establish sufficient bases upon which the Court can grant them relief from the automatic stay, regardless of whether such relief may otherwise be warranted.

*   *   *

Lastly, the Court declines the Movants' invitations to afford them derivative standing pursuant to §105(a).  Such is reserved for truly exceptional circumstances, often involving the bankruptcy trustee's failure to avoid fraudulent transfers.  In re Rosenblum, 545 B.R. 846, 863 (Bankr. E.D. Pa. 2016) (conferring derivative standing on Chapter 13 creditors seeking to avoid fraudulent transfers, which the trustee lacked resources to pursue).  Even then, "[d]erivative standing is appropriate only if: '(i) the movant has alleged a colorable claim that would benefit the estate (ii) the trustee has unjustifiably refused to pursue the claim itself; and (iii) the movant has obtained permission from the bankruptcy court to initiate the action on behalf of the estate.'"  Id. at 863 (quoting In re Stewart, 473 B.R 612, 637 (Bankr. W.D. Pa. 2012), aff'd, 2013 WL 4041963

11

(W.D. Pa. Aug. 8, 2013)).

Lehigh flunks the first prong because, as just discussed, it has failed to establish that it can evict the Manors under Pennsylvania law. To be sure, the Receiver possesses such authority under the Receivership Order. But the Court is unwilling to confer derivative standing on the Receiver when she failed to timely pursue another, more traditional means at her disposal for obtaining the kind of standing she now seeks. See 11 U.S.C. §543(d). Accord In re Watkins, 63 B.R. 46, 47–49 (Bankr. D. Colo. 1986) (holding that, once a receiver complies with §543(a)–(b), the court cannot revest in the receiver the right to administer and/or possess property of the debtor). Moreover, "[i]t is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" L. v. Siegel, 571 U.S. 415, 421 (2014) (quoting Collier on Bankruptcy ¶ 105.01[2] (16th ed. 2013)). Section 543 is explicit. It mandates that a receiver "may not make any disbursement from, or take any action in the administration of, property of the debtor . . . or property of the estate[.]" 11 U.S.C. §543(a). See also id. §543(b) (providing that a "custodian shall . . . deliver to the trustee any property of the debtor held by or transferred to such custodian[.]"). Thus, the Court's general authority under §105(a) must yield to those specific prohibitions found in §543. Siegel, 571 U.S. at 421 ("Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits.").

\*   \*   \*

For these reasons, the Motion must be denied.

12