**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Whitehall Manor, Inc., et al., | Case No. 25-15245 (PMM) |
| Debtors. | Jointly Administered[1] |

**DEBTORS' JOINT
CHAPTER 11 PLAN OF REORGANIZATION DATED MAY 15, 2026[2]**

Lawrence G. McMichael
Anne M. Aaronson
Michelle V. Lee
DILWORTH PAXSON LLP
1650 Market St., Suite 1200
Philadelphia, PA 19103
Telephone:  (215) 575-7000
Facsimile:  (215) 575-7200
Counsel for the Debtor and Debtor in Possession

Date: May 15, 2026

---

[1] The Debtors and debtors-in-possession in these Chapter 11 Cases and the last four digits of their respective taxpayer identification numbers are as follows: (i) Whitehall Trust (4229); (ii) Saucon Trust (4229); (iii) Whitehall Manor, Inc. (5606); (iv) Saucon Valley Manor, Inc. (2894).  The Debtors' mailing address is 1177 6th Street, Whitehall, PA 18052. The Dismissal Order, entered on March 19, 2026, dismissed the cases of debtor Whitehall Trust, Case No. 25-15241-PMM and debtor Saucon Trust, Case No. 25-15243-PMM.

[2]  To the extent that the Bankruptcy Court's dismissal order is affirmed on appeal, Debtors Whitehall Trust and Saucon Trust shall be deemed Plan Proponents instead of Debtors for purposes of this Joint Chapter 11 Plan of Reorganization.

Pursuant to chapter 11, title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, the debtors and debtors-in-possession in the above-captioned and numbered chapter 11 cases, hereby respectfully propose the following Plan of Reorganization (the "Plan"). Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtors' history, business, results of operations, historical financial information, properties, projections for future operations and risk factors, a summary and analysis of the Plan, and certain related matters. The Debtors are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan provides for certain alternatives depending on the resolution of the Dismissal Order Appeal as defined in the Plan. In the event that the Dismissal Order Appeal results in an affirmance of the Dismissal Order, all provisions of the Plan dependent upon the Debtor Trusts being Debtors in these Chapter 11 Cases shall be deemed null and void ab initio and Plan provisions relating to bifurcation of the Claims of Lehigh Valley 1, LLC into secured and deficiency claims shall be deemed withdrawn, unless stated otherwise.

ALL CREDITORS OF THE DEBTORS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING, ON OR BEFORE THE VOTING DEADLINE TO BE SET BY THE BANKRUPTCY COURT, TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

Capitalized terms used herein shall have the meanings set forth in Article I hereof. The Debtors have obtained Bankruptcy Court authority to have the Chapter 11 Cases jointly administered for administrative and procedural purposes only. Accordingly, the Plan is being proposed as a joint plan of the Debtors for administrative and procedural purposes only. The Plan is not premised upon the substantive consolidation of the Debtors or the Chapter 11 Cases and nothing herein shall be otherwise construed. The Debtors, however, reserve the right to seek substantive consolidation by motion or amendment to the Plan if they conclude that substantive consolidation is necessary or appropriate for effectuation of the Plan. If the Dismissal Order Appeal results in a reversal of the Dismissal Order the Debtors intend to effectuate a merger under Pennsylvania law such that Debtor Whitehall Trust[3] will be merged into Debtor Whitehall Manor, Inc. and Debtor Saucon Trust will be merged into Debtor Saucon Valley Manor, Inc., with the surviving entities owning all property of the Debtors and resolving all obligations of the Debtors as set forth in the Plan. Claims against, and Interests in, the Debtors (other than Administrative Claims and Priority Tax Claims) are classified and treated in Article III hereof.

---

[3] As required by the Pennsylvania Secretary of State when Whitehall Trust was registered as a Pennsylvania Business Trust post-petition, Whitehall Trust's registered business name is Whitehall Trust for Senior Care.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

**1.01.** Rules of Interpretation, Computation of Time and Governing Law

1. For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender, (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean, such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words herein and hereto refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3. Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflict of laws thereof.

**1.02.** Defined Terms

1. Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

2. "Adequate Protection Payments" means the monthly amounts of $35,000 each paid by Debtor Whitehall Manor, Inc. and Debtor Saucon Valley Manor, Inc. to Lehigh beginning February 2026 and continuing until confirmation of the Plan, unless modified by the Bankruptcy Court.

3. "Administrative Claim" means a Claim for costs and expenses of administration under sections 503 (b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtor (such as wages, salaries, or commissions for services and

payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under 28 U.S.C. §§ 1911-1930.

4. "Administrative Claim Bar Date" means the date that is thirty days after the Effective Date, except for Professional Fees, which are governed by the Professional Fee Bar Date.

5. "Allowed" means, with respect to a Claim, any Claim, proof of which was timely and properly filed or, if no Proof of Claim was filed, which has been or hereafter is listed by a Debtor on its Schedules as liquidated in amount and not Disputed or contingent and, in either case, as to which no objection to allowance has been interposed on or before the expiration of the time within which to object to such Claim as set forth in the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder.

6. "Allowed Claim" means a Claim that is Allowed in the particular Class described in the Plan.

7. "Assets" means all assets of the Debtors of any nature whatsoever, including, without limitation, the property of the estate pursuant to section 541 of the Bankruptcy Code, Cash, claims of right, interests and property, real and personal, tangible and intangible, legal and equitable, and Causes of Action.

8. "Assumption Effective Date" means the date upon which the assumption of an executory contract or unexpired lease under this Plan is deemed effective.

9. "Avoidance Actions" means any and all Causes of Action which a trustee, debtor in possession, the Estate or other appropriate party in interest may assert under sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

10. "Ballot" means the ballots, substantially similar to the forms accompanying the Disclosure Statement as such forms shall be subsequently amended by the Debtors, upon which Holders of Impaired Claims entitled to vote on the Plan shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting, which Ballots are required to be submitted on or before the Voting Deadline in order to be counted.

11. "Bankruptcy Code" means title 11 of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth, in section 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

12. "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Pennsylvania, having jurisdiction over the Chapter 11 Cases.

13. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the Local Rules of the Bankruptcy Court.

14. "Bar Date" means March 26, 2026, unless otherwise determined by Court Order. For governmental claimants, "Bar Date" means June 26, 2026.

15. "Beneficial Holder" means the Person or Entity holding the beneficial interest in a Claim.

16. "Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and obligations of the United States of America or instrumentalities thereof.

17. "Cash Out Payment" means the amount of $12,000,000 to be paid to Lehigh on the Effective Date of the Plan in full satisfaction of its Claims against the Debtors in the event that Lehigh elects such treatment and satisfaction of its Claims under the Plan.

18. "Causes of Action" means all claims, demands, rights, actions, causes of action and suits of the Debtors' Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, including but not limited to (a) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law, (b) claims pursuant to section 362 of the Bankruptcy Code, (c) claims and defenses such as fraud, mistake, duress, usury (d) all adversary proceedings, State Court proceedings and arbitration proceedings commenced by the Debtors prior to the Effective Date of the Plan and (e) any Avoidance Actions, any account receivable actions, actions brought in the ordinary course of the affairs of the Debtors, any claims against D&O's, Lehigh or any other party in interest or the proceeds thereof, or any claim that is subject to a motion to approve a settlement that is pending on the Effective Date.  Notwithstanding the foregoing, Causes of Action shall not include the right to object to Claims or Interests.

19. "Chapter 11 Cases" means the cases under chapter 11 of the Bankruptcy Code, commenced by the Debtors in the Bankruptcy Court.

20. "Claim" means a claim (as defined in section 101(5) of the Bankruptcy Code) against one or more of the Debtors, including, but not limited to: (a) any right to payment from a Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from a Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; or (c) any right to payment from a Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable or secured, that arose on or after the Petition Date.

21. "Claim Holder," "Claimant" or "Creditor" means the Holder of a Claim.

22. "Claims Objection Deadline" means the latest of: (a) 120 days after the Effective Date; (b) 75 days after the date on which any Claim is filed; or (c) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clauses (a) and (b) above.

23. "Class" means a category of Holders of Claims as set forth in Article III of the Plan.

24. "Confirmation" means the entry of the Confirmation Order, subject to all conditions of this Plan having been (a) satisfied or (b) waived.

25. "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court in its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

26. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

27. "Consummation" means the occurrence of the Effective Date.

28. "Convenience Class Claim" means an Allowed Claim in the amount of $5,000 or less or an Allowed Claim that the Holder elects to reduce to $5,000 to be treated in each subsection of Class 16 of the Plan.

29. "Creditor Fund" means a fund of Cash to be received by Dilworth Paxson LLP on the Effective Date from the Debtors' principal, Abraham Atiyeh, for the payment of all amounts due on the Effective Date as set forth in the Plan, which shall be used for the sole purpose of funding distributions on account of Allowed Administrative Expense Claims and to the holders of Claims in the subclasses of Classes 13, 14 and 16, as well as the initial payment to Lehigh as set forth in Classes 7, 8, 9 and 10 of the Plan.

30. "Cure" means a distribution made in the ordinary course of business following the Effective Date pursuant to an executory contract or unexpired lease assumed under section 365 or 1123 of the Bankruptcy Code (i) in an amount equal to the Proposed Cure (including if such Proposed Cure is zero dollars) or (ii) if a Treatment Objection is filed with respect to the applicable Proposed Cure, then in an amount equal to the unpaid monetary obligations owing by the contracting Debtor and required to be paid pursuant to section 365(b) of the Bankruptcy Code, as may be (x) determined by Final Order or (y) otherwise agreed upon by the parties.

31. "Debt Service Payments" means any and all payments made by Whitehall Manor, Inc. and Saucon Valley Manor, Inc. to Lehigh on account of the Mortgages in accordance with the terms of such Mortgages or as otherwise ordered by the Bankruptcy Court pending confirmation of the Plan.

32. "Debtors" means Whitehall Manor, Inc., Saucon Valley Manor, Inc., Whitehall Trust and Saucon Trust, as debtors in these Chapter 11 Cases.  In the event that the Dismissal Order is affirmed on appeal, Debtors shall be deemed to mean Whitehall Manor, Inc. and Saucon Valley Manor, Inc.

33. "Debtors in Possession" means the Debtors as debtors-in-possession in these Chapter 11 Cases.  If the Dismissal Order is affirmed on appeal, Debtors in Possession shall mean Debtors Whitehall Manor, Inc. and Saucon Valley Manor, Inc. as debtors-in-possession.

34. "Deficiency Claim" means the Claim held by Lehigh, in the event that the Dismissal Order Appeal results in a reversal of the Dismissal Order, for amounts owed to it on account of its security interest in the Debtors' assets that exceeds the value of the Debtors' assets as of the Petition Date.  The amount of the Deficiency Claim owed by each Debtor is set forth in the subsections of Class 16 and is subject to determination by the Bankruptcy Court.

35. "DIP Financing Facility" means that certain line of credit, if sought by the Debtors and approved by the Bankruptcy Court, that is extended post-petition by the Debtors' principal, Abraham Atiyeh to fund the Debtors' operations pending entry of a Confirmation Order, and is secured by a junior post-petition Lien on the Debtors' Assets.

36. "DIP Lender" means the Debtors' principal, Abraham Atiyeh.

37. "Disclosure Statement" means the Disclosure Statement of the Debtors dated May15, 2026, as may be amended, describing this Plan, as may be amended.

38. "Dismissal Order" means the Order and Opinion entered by the Bankruptcy Court on March 19, 2026, dismissing the Chapter 11 cases of debtors Whitehall Trust, Case No. 25-15241-PMM and Saucon Trust, Case No. 25-15243-PMM, the effectiveness of which is presently stayed pending appeal. Case No. 25-15241-PMM, ECF Nos. 263, 264.

39. "Dismissal Order Appeal" means the appeal of the Dismissal Order initiated by Debtors Saucon Trust and Whitehall Trust by notice of appeal dated March 31, 2026, for which direct appeal to the Third Circuit Court of Appeals was sought. Case No. 25-15241, ECF Nos. 269 (Notice of Appeal), 270 (Motion for Certification of Direct Appeal).

40. "Disputed" means, with respect to any Claim, any Claim: (a) listed on the Schedules as unliquidated, disputed or contingent; or (b) as to which the Debtors or any other party in interest has interposed a timely objection or request for estimation, in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

41. "Disputed Claim" means a Claim, or any portion thereof, that is Disputed.  For purposes of the Plan, a Claim that has been neither Allowed nor Disallowed shall be considered a Disputed Claim.

42. "Disputed Claims Reserve" means the reserve established with respect to Disputed Claims against the Debtors to hold Cash that would be distributable to the holders of such Claims if and when such Claims become subsequently Allowed.

43. "Distribution Account" means the interest bearing trust account comprising the Creditor Fund established by Dilworth Paxson LLP on behalf of the Debtors into which funds

escrowed by Abraham Atiyeh shall be deposited and from which the Debtors shall make distributions on the Effective Date in accordance with the Plan.

44. "District Court" means the United States District Court for the Eastern District of Pennsylvania.

45. "Effective Date" means the date upon which all conditions to the Plan, in the Debtors' sole discretion, have been satisfied.  The Debtors shall file a notice with the Court when the Plan becomes effective.

46. "Employee Agreement" means any agreement by and between one or more of the Debtors and any employee who was employed by one or more of the Debtors on or after the Petition Date and remains employed by one or more of the Debtors on the Confirmation Date.

47. "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

48. "Escrow Account" means the account established post-petition by the Receiver to hold the Escrow Cash, namely rent received from Good Shepherd, rent from Debtors Whitehall Manor, Inc. and Saucon Valley Manor, Inc. as ordered by the Bankruptcy Court to be held by the Receiver pending further order of the Bankruptcy Court, and any Debt Service Payments, to be used as provided in the Plan, subject to Bankruptcy Court approval. In the event that the Dismissal Order Appeal results in the reversal of the Dismissal Order, the Debtors intend to seek authority of the Bankruptcy Court to have the Receiver deposit the funds from the Escrow Account into the Distribution Account and used to fund the Plan. In the event that the Dismissal Order Appeal results in the affirmance of the Dismissal Order, the Debtors intend to seek authority of the Bankruptcy Court to have the Receiver apply such funds as set forth in the order of the District Court appointing the Receiver and, to the extent that the application of such funds reduces the amount of any debt being paid by Debtors Whitehall Manor, Inc. and Saucon Valley Manor, Inc. under the Plan, Debtors Whitehall Manor, Inc. and Saucon Valley Manor, Inc. will receive a corresponding credit, reducing the amount required to be paid on account of such debt under the Plan.

49. "Escrow Agent" means the Receiver.

50. "Escrow Cash" means the funds deposited with the Receiver as of the Effective Date in the Escrow Account.

51. "Estate" means the estate of the Debtors created by section 541 of the Bankruptcy Code upon the commencement of these Chapter 11 Cases.

52. "Exculpated Parties" means Dilworth Paxson LLP, Valbridge Property Advisors, Inc. and its affiliate Lukens & Wolf, LLC, Omni, the Receiver, the Patient Care Ombudsman, the DIP Lender, the Debtors and their officers, directors and managers.

53. "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

54. "Final Order" means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no

appeal, petition for certiorari, or motion for reargument or rehearing is then pending, or as to which any right to appeal, petition for certiorari, or move to reargue or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been upheld by the highest court to which such order was appealed, or from which certiorari, reargument or rehearing was sought and the time to take any further appeal, petition, for certiorari or move for reargument or rehearing shall have expired.

55. "Foreclosure Action" means the prepetition cases captioned Lehigh Valley 1, LLC v. Whitehall Fiduciary, LLC, as Trustee of Whitehall Trust U/T/A Dated August 1, 2007, Case No. 5:24-cv-02627-CH and Lehigh Valley 1, LLC v. Saucon Trust, U/T/A Dated October 1, 2007, Case No. 5:24-cv-02709-CH, currently pending in the District Court.

56. "Good Shepherd" means the unaffiliated physical therapy entity that leases space from Debtors' Whitehall Manor, Inc. and Saucon Valley Manor, Inc. and provides services to residents of Whitehall Manor, Inc. and Saucon Valley Manor, Inc. pursuant to a lease by and between Whitehall Manor, Inc. and Good Shepherd Rehabilitation Hospital dated January 1, 2022 and Saucon Valley Manor Senior Living LLC and Good Shepherd Rehabilitation Hospital dated January 1, 2022.

57. "Holder" means a Person or Entity holding a Claim, and, with respect to a vote on the Plan, means the Beneficial Holder as of the Voting Record Date or any authorized signatory who has completed and executed a Ballot.

58. "Initial Lehigh Payment" means the amount of $1,000,000 to be paid from the Distribution Account to Lehigh on account of its Class 7 and 8 Claims on the Effective Date of the Plan as described in the treatment of the Class 7 and 8 Claims.

59. "Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

60. "Insiders" means Abraham Atiyeh, Nimita Kapoor Atiyeh, Priya Kapoor Atiyeh, Abraham Kapoor Atiyeh, and any Entity in which Abraham Atiyeh holds a 25% or larger equity or beneficial interest and that conducts business with the Debtors. The DIP Lender is an Insider. With respect to each Debtor, the other Debtors are also Insiders.

61. "Insurance Plans" means the Debtors' insurance policies and any agreements, documents, or instruments relating thereto entered into prior to the Petition Date.

62. "Interest" means: (i) with respect to Claims arising pursuant to a contract with the Debtors, the non-default contractual rate of interest; and (ii) with respect to all other Claims, the federal judgment rate of interest as of the Petition Date unless otherwise expressly set forth in the Plan with respect to particular payments to be made pursuant to the Plan.

63. "Leases" means the Whitehall Lease and Saucon Lease.

64. "Lessee" means Whitehall Manor, Inc. and Saucon Valley Manor, Inc.

#125633015v1                                          9

65. "Lehigh" means Lehigh Valley 1, LLC, as successor by assignment to Windstream Capital LLC, successor by assignment to the United Stated Secretary of Housing and Urban Development, successor by assignment to M&T Realty Capital Corporation, and the current holder of the Mortgages secured by the real estate held by Debtors Saucon Trust and Whitehall Trust as of the Petition Date and holder of a security interest in the rents of Debtors Saucon Valley Manor, Inc. and Whitehall Manor, Inc. pursuant to those certain Security Agreements between M&T Realty Capital Corporation, as predecessor in interest to Lehigh, and Debtors Whitehall Manor, Inc. and Saucon Valley Manor, Inc., dated January 26, 2012 and December 1, 2012 respectively.

66. "License Agreement" means an agreement with a state, federal, or local governmental, or quasi-governmental agency pursuant to which the Debtors operate any of their programs.

67. "Lien" means any charge against or interest in property to secure payment or performance of a claim, debt, or obligation.

68. "Manor Debtor(s)" means Saucon Valley Manor, Inc. and/or Whitehall Manor, Inc.

69. "Mortgages" means (i) the January 19, 2012 mortgage between Whitehall Fiduciary, LLC as Trustee of Whitehall Trust u/t/a dated August 1, 2007 and M&T Realty Capital Corporation for *Fifteen Million Seven Hundred Eighty-Eight Thousand Seven Hundred and No/100 Dollars* ($15,788,700.00) recorded in Lehigh County, Instrument No. 2012002759; and (ii) the December 1, 2012 mortgage between Saucon Trust, u/t/a Dated October 1, 2007 and M&T Realty Capital Corporation for *Nineteen Million Four Hundred Sixty-Two Thousand Eight Hundred and No/100 Dollars* ($19,462,800.00) recorded in Northampton County, Instrument No. 2012040239 both of which are currently held by Lehigh as successor by assignment to Windstream Capital LLC, successor by assignment to the United Stated Secretary of Housing and Urban Development, and successor by assignment to M&T Realty Capital Corporation.

70. "Net Operating Revenues" means the receipts of each Debtor entity following the Effective Date of the Plan in excess of expenses incurred in the ordinary course of business. The Debtors estimate, based on their average net operating revenues during these Chapter 11 cases, that Debtor Whitehall Manor's Net Operating Revenues and that Debtor Saucon Valley Manor's Net Operating Revenues.

71. "Notice of Intent to Assume or Reject" means a notice delivered by the Debtors pursuant to Article V of the Plan stating an intent to assume or reject an executory contract or unexpired lease and including a proposed Assumption Effective Date or Rejection Effective Date, as applicable, and, if applicable, a Proposed Cure and/or a proposed amendment.

72. "Omni" means Omni Agent Solutions, Inc. which was retained as the Debtors' Noticing and Claims Agent in these Chapter 11 Cases and who will serve as the Voting Agent under the Debtors' Plan.

73. "PCH" means Personal Care Home as operated by the Debtor Manors on the real property owned by the Debtor Trusts.

74. "<u>Patient Care Ombudsman</u>" shall mean Margaret Barajas, duly appointed Patient Care Ombudsman for the Debtors by order of the Bankruptcy Court dated January 28, 2026. Case No. 25-15241, ECF Nos. 145 (order directing U.S. Trustee to appoint a patient care ombudsman), 169 (notice of appointment of Patient Care Ombudsman Margaret Barajas).

75. "<u>Person</u>" means a person as defined in section 101(41) of the Bankruptcy Code.

76. "<u>Petition Date</u>" means December 26, 2025, the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Case.

77. "<u>Plan</u>" means this Chapter 11 Plan of Reorganization, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Plan, the Bankruptcy Code and the Bankruptcy Rules.

78. "<u>Plan Supplement</u>" means a document, if any, supplementing the Plan to be submitted with the Court no later than ten (10) days prior to the Confirmation Hearing.

79. "<u>Priority Claim</u>" means a Claim of the kind specified in 507(a) of the Bankruptcy Code.

80. "<u>Pro Rata</u>" means, as of any given date, the proportion that the amount of any Claim in a particular Class bears to the aggregate amount of all Claims in such class, including Disputed Claims (taking into account the estimation of Claims).

81. "<u>Professional</u>" means a Person or Entity: (a) employed pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

82. "<u>Professional Fee Bar Date</u>" means for all professionals employed in the Chapter 11 Case, the date that is thirty days following the Effective Date.

83. "<u>Professional Fee Claim</u>" means those fees and expenses claimed by Professionals retained through a Bankruptcy Court order pursuant to sections 330, 331 and/or 503 of the Bankruptcy Code, and unpaid as of the Confirmation Date.

84. "<u>Professional Fees</u>" means all Allowed Claims for compensation and for reimbursement of expenses under sections 328 and 330 of the Bankruptcy Code.

85. "<u>Proof of Claim</u>" means a proof of claim pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

86. "<u>Proposed Cure</u>" means, with respect to a particular executory contract or unexpired lease, the consideration that the Debtor proposes (i) on the notices sent to Assumption Parties listed on Schedules 5.02(a); (ii) on a Notice of Intent to Assume or Reject, or (iii) as specified in Article V and/or Class 14 hereof, in each case as full satisfaction of the Debtors'

obligations with respect to such executory contract or unexpired lease pursuant to section 365(b) of the Bankruptcy Code.

87. "Receiver" means Erin Duffy, appointed by the United States District Court for the Eastern District of Pennsylvania in the Foreclosure Action.

88. "Regulatory Agreement" means (i) the December 1, 2012 Regulatory Agreement between Saucon Valley Manor, Inc. and the Federal Housing Commissioner; (ii) the January 19, 2012 Regulatory Agreement between Whitehall Manor, Inc. and the Secretary of Housing and Urban Development; (iii) the December 1, 2012 Regulatory Agreement between Saucon Trust, u/t/a October 1, 2007 and the Secretary of Housing and Urban Development; (iv) the January 19, 2012 Regulatory Agreement between Whitehall Fiduciary, LLC as Trustee of Whitehall Trust u/t/a dated August 1, 2007 and the Secretary of Housing and Urban Development.

89. "Rejection Bar Date" means the earlier of (a) twenty days following the Effective Date of the Plan, or (b) thirty days from the date on which the relevant executory contract or unexpired lease is effectively rejected by the Debtors.

90. "Rejection Damages Claims" means (a) Claims of any non-Debtor counterparty to any unexpired lease of nonresidential real property or any executory contract arising on account of the rejection of such lease or contract during the administration of these Chapter 11 Cases under section 365 of the Bankruptcy Code or pursuant to the Plan; and (b) any Claims arising from the termination of or withdrawal from any pension plan of a Debtor qualified under ERISA.

91. "Rejection Effective Date" means (a) the date on which a final order is entered with respect to the rejection of an executory contract or unexpired lease during the administration of these Chapter 11 Cases under section 365 of the Bankruptcy Code, or (b) the date upon which the rejection of an executory contract or unexpired lease under this Plan is deemed effective.

92. "Released Parties" means the Debtors, their officers, directors, and managers and the DIP Lender.

93. "Reorganized" means each Debtor that is a party to the Plan and as of the Effective Date of the Plan.

94. "Saucon Lease" means the lease between Abraham Atiyeh and Saucon Valley Manor, Inc. effective January 1, 2006, as amended from time to time, including the Lease Amendment (dated December 8, 2006), the Addendum to Lease Agreement (dated October 1, 2007) whereby Abraham Atiyeh assigned the Saucon Lease to Saucon Trust as landlord, the Second Addendum to Lease Agreement (dated August 29, 2008), the Third Amendment to Lease Agreement (dated January 1, 2010), the Fourth Amendment to Lease Agreement (dated November 1, 2012), and the Fifth Amendment to Lease Agreement (dated July 1, 2018).

95. "Schedules" means the schedules of assets and liabilities as the Bankruptcy Court requires the Debtors to file pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

96. "Secured Claim" means (a) a Claim that is secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the Claim Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) a Claim Allowed expressly under this Plan as a Secured Claim.

97. "Security Agreement" means (i) the Lessee Security Agreement between Saucon Valley Manor, Inc. and M&T Realty Capital Corporation (dated December 1, 2012); (ii) Lessee Security Agreement between Whitehall Manor, Inc. and M&T Realty Capital Corporation (dated January 26, 2012); (iii) Security Agreement between Saucon Trust, u/t/a Dated October 1, 2007 and M&T Realty Capital Corporation (dated December 1, 2012); and (iv) Security Agreement between Whitehall Fiduciary, LLC as Trustee of Whitehall Trust u/t/a dated August 1, 2007 and M&T Realty Capital Corporation (dated January 26, 2012).

98. "Stay Order" means the order of the Bankruptcy Court entered on April 2, 2026 at Case No. 25-15245, Docket No. 67 granting Debtors' Motion for a Stay Pending Appeal of the Dismissal Order pending resolution of the Dismissal Order Appeal.

99. "Treatment Objection" means an objection to the Debtors' proposed assumption or rejection of an executory contract or unexpired lease pursuant to the provisions of this Plan (including an objection to the proposed Assumption Effective Date or Rejection Effective Date, the Proposed Cure and/or any proposed assignment, but not including an objection to any Rejection Damages Claim) that is properly filed with the Bankruptcy Court and served by the Applicable Treatment Objection Deadline.

100. "Treatment Objection Deadline" means the deadline for filing and serving a Treatment Objection, which deadline shall be 4:00 p.m. (prevailing Eastern Time) on, (i) with respect to an executory contract or unexpired lease listed on Schedule 7.02(a) or 7.02(b), the 15th calendar day after the relevant Schedule is filed and notice thereof is mailed, (ii) with respect to an executory contract or unexpired lease the proposed treatment of which has been altered by an amended or supplemental Schedule 7.02(a) or 7.02(b), the 15th calendar day after such amended or supplemental schedule is filed and notice thereof is mailed, (iii) with respect to an executory contract or unexpired lease for which a Notice of Intent to Assume or Reject is filed, the 15th calendar day after such notice is filed and notice thereof is mailed and (iv) with respect to any other executory contract or unexpired lease, including any to be assumed or rejected by category pursuant to Sections 7.01, 7.03 or 7.04 of the Plan (without being listed on Schedule 7.02(a) or 7.02(b)), the deadline for objections to confirmation of the Plan established pursuant to the Approval Order or other order of the Bankruptcy Court.

101. "Trust Assets" means, as to Debtor Whitehall Trust, that certain real estate located at 1177 N. Sixth Street, Whitehall, PA 18052 plus accounts receivable owed to it by its affiliated Debtor Whitehall Manor, Inc. pursuant to the Whitehall Lease, and, as to Debtor Saucon Trust, that certain real estate located at 1050 Main Street, Hellertown, PA 18055 plus accounts receivable owed to it by its affiliated Debtor Saucon Valley Manor, Inc. pursuant to the Saucon Lease.

#125633015v1                               13

102. "Trust Debtor(s)" means Saucon Trust and/or Whitehall Trust.

103. "Trustee" means the Office of the United States Trustee for the Eastern District of Pennsylvania.

104. "Unimpaired Class" means a Class that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

105. "Unsecured Claim" means any Claim against the Debtors that is not a Secured Claim, Administrative Claim, Deficiency Claim or Priority Claim.

106. "Voting Agent" means Omni, which will serve as recipient for all Ballots submitted by Holders of Claims entitled to vote on the Plan.

107. "Voting Deadline" means the date and time that shall be set by the Bankruptcy Court for the submission of ballots voting in favor of or against the Plan, notice of which shall be mailed to Holders of Claims in Classes entitled to vote on the Plan.

108. "Voting Record Date" means the date on which the Bankruptcy Court enters an order approving the Debtors' Disclosure Statement.

109. "Whitehall Lease" means the lease between Whitehall Fiduciary, LLC as Trustee of Whitehall Trust u/t/a/ dated August 1, 2007 (lessor) and Whitehall Manor, Inc. (lessee) effective as of August 14, 2008 as amended from time to time, including the First Amendment (dated January 1, 2010), the Second Amendment (dated January 1, 2012), and the Third Amendment (dated August 31, 2018).

## ARTICLE II
## CLASSIFICATION OF CLAIMS

**2.01.** Generally.  Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class.  A Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date. The treatment of and consideration to be received by Holders of Allowed Claims or Allowed Interests pursuant to this Article III and the Plan shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Claims against or Interests in the Debtors and the Debtors' respective Estate, except as otherwise provided in the Plan or the Confirmation Order.

**2.02.** Unclassified Claims.   In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are excluded from the Classes designated in this Article III of the Plan.  The treatment accorded Administrative Claims and Priority Tax Claims is set forth in Article III of the Plan.

**2.03.** <u>Unimpaired Classes</u>.  The Plan classifies the following Unimpaired Claims and Unimpaired Interests that are not entitled to vote on the Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of a Claim or Interest in the following Classes is conclusively presumed to have accepted the Plan in respect of such Claims or Interests and is not entitled to vote to accept or reject the Plan:

A. Class 6 shall consist of the Secured Claim of Ameris Bank

B. Class 12 shall consist of all Unsecured Priority Claims.

C. Class 17 shall consist of all Equity Interests.

**2.04.** <u>Impaired Classes Entitled to Vote</u>.  The Plan classifies the following Classes as the Impaired Classes that may receive a distribution under the Plan and that are entitled to vote to accept or reject the Plan:

A. Class 1 shall consist of the Secured Claim of Coplay Whitehall Sewer Authority against Whitehall Manor

B. Class 2 shall consist of the Miscellaneous Secured Claims of Taxing Authorities filed against Whitehall Manor and Whitehall Trust

C. Class 3 shall consist of the Miscellaneous Secured Claims of Taxing Authorities filed against Saucon Valley Manor and Saucon Trust

D. Class 4 shall consist of the Secured Claim of US Foods against Saucon Valley Manor

E. Class 5 shall consist of the Secured Claim of US Foods against Whitehall Manor

F. Class 7 shall consist of the Secured Claim of Lehigh against Whitehall Manor

G. Class 8 shall consist of the Secured Claim of Lehigh against Saucon Valley Manor

H. Class 9 shall consist of the Secured Claim of Lehigh against Whitehall Trust

I. Class 10 shall consist of the Secured Claim of Lehigh against Saucon Trust

J. Class 13 shall consist of the Unsecured Contract Claims of Trade Vendors against each Debtor as set forth in the subsections thereof

K. Class 14 shall consist of the Unsecured Vendor and Service Provider Claims against each Debtor as set forth in the subsections thereof

L. Class 15 shall consist of the Unsecured Deficiency Claim of Lehigh against each Debtor as set forth in the subsections thereof

M. Class 16 shall consist of the Convenience Class Claims against each Debtor as set forth in the subsections thereof

**2.05.** Impaired Classes Deemed to Reject.   The Plan classifies the following Impaired Classes of Interests and Claims as Impaired Classes that are not entitled to vote to accept or reject the Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, each Holder of an Interest or Claim in these Classes is conclusively presumed to have rejected the Plan in respect of such Interests or Claims because the Plan does not entitle the Holders of such Interests and Claims to receive or retain any property under the Plan on account of such Interests or Claims.  Accordingly, Holders of such Interests and Claims are not entitled to vote to accept or reject the Plan:

A. Class 11 shall consist of the Secured Claim of Whitehall Condominium

B. Class 18 shall consist of all Insider Claims other than the Administrative Claim of the DIP Lender and Secured Claim of Whitehall Condominium.

## ARTICLE III
## TREATMENT OF CLAIMS

**3.01.** Unclassified Claims

A. Professional Fee Claims

Professionals who are entitled to reimbursement or allowance of fees and expenses pursuant to Sections 503(b)(2) through 503(b)(6) of the Bankruptcy Code, shall be paid in the amount awarded to such Professionals by Final Order of the Bankruptcy Court as soon as is practicable after such award.  To the extent fees and expenses have been awarded prior to and remain outstanding on the Effective Date, those obligations will be paid on the Effective Date with funds from the Distribution Account.  Notwithstanding anything herein to the contrary, the Holder of an Allowed Claim for Professional Fees may be paid on such other date and upon such other amount and terms as may be agreed upon by that Holder.

Except to the extent that another Bar Date applies pursuant to an order of the Bankruptcy Court, any petition for allowance of a Professional Fee Claim must be filed with the Bankruptcy Court and served on the Debtors at the address listed in Article XIII of the Plan so that it is received by the Professional Fee Bar Date or such Claim shall be forever barred and shall not be enforceable against the Debtors, their successors, their assigns, or their property.

B. Administrative Claims

Administrative Claims are Unimpaired Claims.  Unless otherwise provided for herein, each Holder of an Allowed Administrative Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim: (a) the amount of such unpaid Allowed Claim on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Administrative Claim becomes Allowed, or (iii) a date agreed to in writing by the Debtors

and the Holder of such Administrative Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Debtors or as the Bankruptcy Court may order. All requests for allowance of Administrative Expense Claims not filed on or before the Administrative Claim Bar Date shall be forever barred and shall not be enforceable against the Debtors, their successors, their assigns or their property. To the extent that the Debtors obtain a DIP Financing Facility, upon entry of a Confirmation Order, the DIP Lender will waive repayment of such facility as part of the new value contribution to fund the Plan.

C. Priority Tax Claims

Priority Tax Claims are Unimpaired.  Each Holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtors, in full satisfaction, settlement, release, extinguishment and discharge of such Priority Tax Claim: (a) the amount of such unpaid Allowed Priority Tax Claim on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes Allowed and (iii) a date agreed to by the Debtors and the Holder of such Priority Tax Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Priority Tax Claim and the Debtors or as the Bankruptcy Court may order.  Prior to the Effective Date, the Debtors shall have the right, in their sole discretion, to prepay at any time, in whole or in part, any Allowed Priority Tax Claim without premium or penalty of any sort or nature. The Debtors do not believe there are any Priority Tax Claims.

**3.02.** Classified Claims

The categories of Claims listed below classify Claims for all purposes, including voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(l) of the Bankruptcy Code.  A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that such Claim is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  All payments required under the Plan to be paid to a Class of Creditors shall be in Cash.

The treatment of all Claims herein shall be consistent with the priority scheme set forth in Section 507 of the Bankruptcy Code.

The classification of Claims against the Debtors in this Plan has been summarized in the following chart:

| Code | Class | Status | Entitled to Vote? |
|------|-------|--------|-------------------|
| Class 1 | Secured claim of Coplay Whitehall Sewer Authority | Impaired | YES |
| Class 2 | Miscellaneous Secured Claims of Taxing Authorities | Impaired | YES |

|  |  |  |  |
|---|---|---|---|
|  | filed against Whitehall Manor and/or Whitehall Trust |  |  |
| Class 3 | Miscellaneous Secured Claims of Taxing Authorities filed against Saucon Valley Manor and/or Saucon Trust | Impaired | YES |
| Class 4 | Secured Claim of US Foods against Saucon Valley Manor | Impaired | YES |
| Class 5 | Secured Claim of US Foods against Whitehall Manor | Impaired | YES |
| Class 6 | Secured Claim of Ameris Bank | Unimpaired | No |
| Class 7 | Secured Claim of Lehigh against Whitehall Manor | Impaired | YES |
| Class 8 | Secured Claim of Lehigh against Saucon Valley Manor | Impaired | YES |
| Class 9 | Secured Claim of Lehigh against Whitehall Trust | Impaired | YES |
| Class 10 | Secured Claim of Lehigh against Saucon Trust | Impaired | YES |
| Class 11 | Secured Claim of Whitehall Condominium | Impaired | No |
| Class 12 | Priority Unsecured Claims | Unimpaired | No |
| Class 13 | Unsecured Contract Claims of Trade Vendors, separately classified by Debtor in the subsections thereof | Impaired | YES |
| Class 14 | Unsecured Vendors and Service Provider Claims, separately classified by Debtor in the subsections thereof | Impaired | YES |
| Class 15 | Unsecured Deficiency Claim of Lehigh, separately | Impaired | YES |

| | classified by Debtor in the subsections thereof | | |
|---|---|---|---|
| Class 16 | Convenience Class Claims, separately classified by Debtor in the subsections thereof | Impaired | YES |
| Class 17 | Interests | Unimpaired | No |
| Class 18 | Insider Claims | Impaired | No |

Classification and treatment of claims under the Plan shall be as follows:

A. **CLASS 1 – <u>Secured Claim of Coplay Whitehall Sewer Authority against Whitehall Manor, Inc.</u>**

Coplay Whitehall Sewer Authority asserts an unsecured claim against Whitehall Manor, Inc. in the amount of $7,450.81. Debtors listed this claim as secured on Schedule D.  The status of this claim will be determined during the claims objection process.

If the claim is determined to be secured, then (i) Plan payments on account of Class 1 claims, to the extent Allowed, shall equal the full amount of such Class 1 claim, plus interest at the statutory rate or such lower rate as necessary to achieve present value, and be paid over a period of five (5) years from the Effective Date until paid in full, and (ii)  Coplay Whitehall Sewer Authority shall retain its Lien in the same priority and to the same extent as it existed on the Petition Date until all payments due on account of its Class 1 Secured Claim under the Plan are paid in full.

If the claim is determined to be unsecured, then Coplay Whitehall Sewer Authority shall be treated in the same manner as Class 15 below.

This claim is impaired.

B. **CLASS 2 – <u>Miscellaneous Secured Claims of Taxing Authorities Filed Against Whitehall Manor and/or Whitehall Trust.</u>**

Class 2 consists of miscellaneous secured claims asserted by (i) Whitehall Township in the amount of $34,096.20, (ii) Whitehall Coplay School District in the amount of $ 257,618.54, and (iii) Lehigh County Tax Claim Bureau in the amount of $42,311.80.  Pursuant to the Security Agreement, Mortgage, and Lease, property taxes are Obligations (as defined in the Security Agreement) required to be paid by Whitehall Manor, Inc.; however, to the extent that Class 2 claims become Allowed secured claims, the security interest is in the assets of Whitehall Trust. Plan payments on account of Class 2 secured claims, to the extent Allowed, shall equal the full amount of such Class 2 claims, plus interest at the statutory rate or such lower rate as necessary to achieve present value, and be paid over a period of five (5) years from the Effective Date until paid in full.

The miscellaneous taxing authorities shall retain their Liens in the same priority and to the same extent as existed on the Petition Date until all payments due on account of their respective Class 2 Secured Claim under the Plan are paid in full.

This claim is impaired.

C. **CLASS 3 – <u>Miscellaneous Secured Claims of Taxing Authorities Filed Against Saucon Valley Manor and/or Saucon Trust.</u>**

#125633015v1                                             20

Class 3 consists of miscellaneous secured claims asserted by (i) Saucon Valley School District in the amount of $220,654.35, (ii) Borough of Hellertown in the amount of $94,600.00, and (iii) County of Northampton in the amount of $47,520.00. Pursuant to the Security Agreement, Mortgage, and Lease, property taxes are Obligations (as defined in the Security Agreement) required to be paid by Saucon Valley Manor, Inc.; however, to the extent that Class 3 claims become Allowed secured claims, the security interest is in the assets of Saucon Trust. Plan payments on account of Class 3 secured Claims, to the extent Allowed, shall equal the full amount of such Class 3 Claim, plus interest at the statutory rate or such lower rate as necessary to achieve present value, and be paid over a period of five (5) years from the Effective Date until paid in full.

The Borough of Hellertown filed an unsecured claim for unpaid property taxes. The claim is listed as secured on Schedule D. The nature of the claim will be resolved during the claims objection process.

The miscellaneous taxing authorities shall retain their Liens in the same priority and to the same extent as existed on the Petition Date until all payments due on account of their respective Class 3 Secured Claim under the Plan are paid in full.

This claim is impaired.

D. **CLASS 4 - <u>Secured Claim of US Foods Inc. against Saucon Valley Manor, Inc.</u>**

US Foods, Inc. asserts a secured claim against Saucon Valley Manor in the amount of $21,185.79 that is secured by a Lien on assets of Saucon Valley Manor pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499(e)(c).  Plan payments on account of Class 4 claims, to the extent Allowed, shall equal the full amount of such Class 4 claim, plus interest at the statutory rate or such lower rate as necessary to achieve present value, and be paid over a period of five (5) years from the Effective Date until paid in full.

US Foods, Inc. shall retain its Lien on assets of Saucon Valley Manor in the same priority and to the same extent as existed on the Petition Date until all payments due on account of its Class 4 Secured Claim under the Plan are paid in full.

This claim is impaired.

E. **CLASS 5 - <u>Secured Claim of US Foods, Inc. against Whitehall Manor, Inc.</u>**

US Foods, Inc. asserts a secured claim against Whitehall Manor in the amount of $9,375.36 that is secured by a Lien on assets of Whitehall Manor pursuant to the Perishable Agricultural Commodities Act, 7 USC 499(e)(c).  Plan payments on account of Class 5 claims, to the extent Allowed, shall equal the full amount of such Class 5 claim, plus interest at the statutory rate or

such lower rate as necessary to achieve present value, and be paid over a period of five (5) years from the Effective Date until paid in full.

US Foods, Inc. shall retain its Lien on assets of Whitehall Manor in the same priority and to the same extent as existed on the Petition Date until all payments due on account of its Class 5 Secured Claim under the Plan are paid in full.

This claim is impaired.

F. **CLASS 6 - <u>Secured Claim of Ameris Bank</u>.**

Ameris Bank asserts a secured claim against Whitehall Manor in the amount of $149,319.84 that is secured by a Lien on a call system located at Whitehall Manor. Plan payments on account of Class 6 Secured Claims, to the extent Allowed, shall continue to be made pursuant to the terms of its contract with Whitehall Manor, Inc.

Ameris Bank shall retain its Lien on the call system in the same priority and to the same extent as it existed on the Petition Date until all payments due on account of its Class 6 Secured Claim under the Plan are paid in full.

This claim is unimpaired.

G. **CLASS 7 - <u>Secured Claim of Lehigh Valley 1, LLC against Whitehall Manor, Inc.</u>**

Lehigh asserts a Secured Claim against Debtor Whitehall Manor, Inc. secured by a Lien on certain assets, including the receivables, of Whitehall Manor, Inc. pursuant to that certain Security Agreement dated January 26, 2012.  Class 7 will be treated as follows:

a.      In the event that the Dismissal Order Appeal results in a reversal of the Dismissal Order, Plan payments to Lehigh from Whitehall Manor, Inc. as of the Effective Date on account of Lehigh's Class 7 and Class 9 Claims will be made from the Distribution Account in the amount of the going concern value of the assets of Whitehall Manor, Inc. and Whitehall Trust, as determined by the Bankruptcy Court, less a credit for Adequate Protection Payments, Debt Service Payments, and any payments received from the Escrow Account prior to the Effective Date or thereafter, with principal and interest amortized over a period of 20 years, with a balloon payment of the balance made at the end of the 10th year following the Effective Date of the Plan. Prepayment is permitted without penalty.  Interest on the Class 7 and 9 claims will be sufficient to render the payments made equal to the present value of the secured claim. Amounts owed to Lehigh above the amount paid on account of Lehigh's Class 7 and

Class 8 Secured Claims, as may be determined by the Bankruptcy Court or agreement of the parties, shall be treated in Class 15A below.

b.      In the event that the Dismissal Order Appeal results in an affirmance of the Dismissal Order, Plan payments to Lehigh from Whitehall Manor, Inc. as of the Effective Date will consist of a payment in the amount of $500,000 (one half of the Initial Lehigh Payment) plus a second position note and security agreement (the "Whitehall Arrearage Note") for the balance of existing defaults as of the Effective Date of the Plan secured to the same extent as the Mortgage on the Debtors' Assets and having the same maturity as the Mortgage, after application to the Whitehall Arrearage Note of all Adequate Protection Payments, Debt Service Payments, and payments received from the Escrow Account prior to the Effective Date or thereafter.  Monthly payments from Whitehall Manor, Inc.'s Net Operating Revenue will be in an amount equal the monthly principal and interest payment required to service the Mortgage for the remainder of its stated term until such Mortgage has been satisfied by the end of its stated term.  The maturity, interest rate and terms of the Whitehall Arrearage Note will be the same as the Mortgage.

c.      In lieu of a. or b. above, Lehigh may elect the Cash Out Payment on account of the full satisfaction of its Class 7, 8, 9, 10 and 15A Claims against the Debtors in the aggregate amount of $12,000,000 Cash on the Effective Date of the Plan, less all Adequate Protection Payments, Debt Service Payments, and payments received from the Escrow Account prior to the Effective Date.

d.      In the event that Lehigh makes the election under Section 1111(b) of the Bankruptcy Code, it shall receive a stream of payments that total the full amount of its allowed claim over 25 years, plus any additional interest as determined by the Bankruptcy Court to make the present value of the payment stream equal to the value of the security for such Allowed Claim, also as determined by the Bankruptcy Court.

Upon the Effective Date of the Plan, the Foreclosure Action shall be suspended or dismissed, without prejudice, so long as payments are being made in accordance with the above provisions.  Lehigh may commence or reinstate the Foreclosure Action proceedings if the Reorganized Whitehall Manor, Inc. defaults in its payment obligations to Lehigh under the Plan.

Until payment is made as set forth in a., b., c. or d. above, Lehigh shall retain its security interests in all assets of Whitehall Manor, Inc., in the same priority and to the same extent as they existed on the Petition Date.

This claim is impaired.

H. **CLASS 8 – <u>Secured Claim of Lehigh Valley I, LLC against Saucon Valley Manor, Inc.</u>**

Lehigh asserts a secured claim against Debtor Saucon Valley Manor, Inc. secured by a Lien on certain assets, including the receivables, of Saucon Valley Manor, Inc. pursuant to that certain Security Agreement dated December 1, 2012. Class 8 will be treated as follows:

a.      In the event that the Dismissal Order Appeal results in a reversal of the Dismissal Order, Plan payments to Lehigh from Saucon Valley Manor, Inc. as of the Effective Date on account of Lehigh's Class 8 and Class 10 Claims will be made from the Distribution Account in the amount of the going concern value of the assets of Saucon Valley Manor, Inc. and Saucon Trust, as determined by the Bankruptcy Court, less a credit for Adequate Protection Payments, Debt Service Payments, and any payments received from the Escrow Account prior to the Effective Date or thereafter, with principal and interest amortized over a period of 20 years, with a balloon payment of the balance made at the end of the 10th year following the Effective Date of the Plan. Prepayment is permitted without penalty.  Interest on the Class 8 and 10 claims will be sufficient to render the payments made equal to the present value of the secured claim. Amounts owed to Lehigh above the amount paid on account of Lehigh's Class 7 and Class 8 Secured Claims, as may be determined by the Bankruptcy Court or agreement of the parties, shall be treated in Class 15C below.

b.      In the event that the Dismissal Order Appeal results in an affirmance of the Dismissal Order, Plan payments to Lehigh from Saucon Valley Manor, Inc. as of the Effective Date will consist of a payment in the amount of $500,000 (one half of the Initial Lehigh Payment) plus a second position note and security agreement (the "Saucon Arrearage Note") for the balance of existing defaults as of the Effective Date of the Plan secured to the same extent as the Mortgage on the Debtors' Assets and having the same maturity as the Mortgage, after application to the Saucon Arrearage Note of all Adequate Protection Payments, Debt Service Payments, and payments received from the Escrow Account prior to the Effective Date or thereafter.  Monthly payments from Saucon Valley Manor, Inc.'s Net Operating Revenue will be in an amount equal the monthly principal and interest payment required to service the Mortgage for the remainder of its stated term until such Mortgage has been satisfied by the end of its stated term.  The maturity, interest rate and terms of the Saucon Arrearage Note will be the same as the Mortgage.

c.      In lieu of a. or b. above, Lehigh may elect the Cash Out Payment on account of the full satisfaction of its Class 7, 8, 9, 10 and 15C Claims against the Debtors in the aggregate amount of $12,000,000 Cash on the Effective Date of the Plan, less all Adequate Protection Payments, Debt Service Payments, and payments received from the Escrow Account prior to the Effective Date.

d.      In the event that Lehigh makes the election under Section 1111(b) of the Bankruptcy Code, it shall receive a stream of payments that total the full amount of its allowed claim over 25 years, plus any additional interest as determined by the Bankruptcy Court to make the present value of the payment stream equal to the value of the security for such Allowed Claim, also as determined by the Bankruptcy Court.

Upon the Effective Date of the Plan, the Foreclosure Action shall be suspended or dismissed, without prejudice, so long as payments are being made in accordance with the above provisions.  Lehigh may commence or reinstate the Foreclosure Action proceedings if the Reorganized Saucon Valley Manor, Inc. defaults in its payment obligations to Lehigh under the Plan.

Until payment is made as set forth in a., b., c. or d. above, Lehigh shall retain its security interests in all assets of Saucon Valley Manor, Inc., in the same priority and to the same extent as they existed on the Petition Date.

This claim is impaired.

I. **CLASS 9 – <u>Secured Claim of Lehigh Valley I, LLC against Whitehall Trust</u>**.

Lehigh asserts a secured claim against Debtor Whitehall Trust secured by a Lien on the real property owned by Whitehall Trust and located at 1177 Sixth Street, Whitehall PA. The Class 9 Claim will be treated as follows:

a.      In the event that the Dismissal Order Appeal results in a reversal of the Dismissal Order, Plan payments will be made to Lehigh as set forth in the treatment provided for Class 7, option a. above. On the Effective Date, the Whitehall Trust will merge into Whitehall Manor, Inc.

b.      In the event that the Dismissal Order Appeal results in an affirmance of the Dismissal Order, Class 9 will be deemed stricken from the Plan and of no effect and no payment will be made to Lehigh from Debtor Whitehall Trust on account of the Class 9 Claim under the Plan.  Whitehall Manor, Inc. will pay the entire claim pursuant to Class 7, Option (b) of this Plan.

c.      In lieu of a. above, Lehigh may elect the Cash Out Payment on account of the full satisfaction of its Class 7, 8, 9, 10 and 15B Claims against the Debtors in the aggregate amount of $12,000,000 Cash on the Effective Date of the Plan, less all Adequate Protection Payments, Debt Service Payments, and payments received from the Escrow Account prior to the Effective Date.

      d.     In the event that Lehigh makes the election under Section 1111(b) of the Bankruptcy Code, it shall receive a stream of payments that total the full amount of its allowed claim over 25 years, plus any additional interest as determined by the Bankruptcy Court to make the present value of the payment stream equal to the value of the security for such Allowed Claim, also as determined by the Bankruptcy Court.

Upon the Effective Date of the Plan, the Foreclosure Action shall be suspended or dismissed, without prejudice, son long as payments are being made in accordance with the above provisions. Lehigh may commence or reinstate the Foreclosure Action if the Reorganized Whitehall Manor, Inc. defaults in its payment obligations to Lehigh under the Plan.

Until payment is made as set forth in a., b., c. or d. above, Lehigh shall retain its security interests in all assets of Whitehall Trust, in the same priority and to the same extent as they existed on the Petition Date.

This claim is impaired.

### J. **CLASS 10 – <u>Secured Claim of Lehigh Valley I, LLC against Saucon Trust</u>**.

Lehigh asserts a secured claim against the Debtors secured by a Lien on the real property owned by Saucon Trust and located at 1050 Main Street, Hellertown, PA. The Class 10 Claim will be treated as follows:

      a.     In the event that the Dismissal Order Appeal results in a reversal of the Dismissal Order, Plan payments will be made to Lehigh as set forth in the treatment provided for Class 8, option a. above. On the Effective Date, the Saucon Trust will merge into Saucon Valley Manor, Inc.

      b.     In the event that the Dismissal Order Appeal results in an affirmance of the Dismissal Order, Class 10 will be deemed stricken from the Plan and of no effect and no payment will be made to Lehigh from Debtor Saucon Trust on account of the Class 10 Claim under the Plan. Saucon Valley Manor, Inc. will pay the entire claim pursuant to Class 8, Option (b) of the Plan.

      c.     In lieu of a. above, Lehigh may elect the Cash Out Payment on account of the full satisfaction of its Class 7, 8, 9, 10 and 15D Claims against the Debtors in the aggregate amount of $12,000,000 Cash on the Effective Date of the Plan, less all Adequate Protection Payments, Debt Service Payments, and payments received from the Escrow Account prior to the Effective Date.

d. In the event that Lehigh makes the election under Section 1111(b) of the Bankruptcy Code, it shall receive a stream of payments that total the full amount of its allowed claim over 25 years, plus any additional interest as determined by the Bankruptcy Court to make the present value of the payment stream equal to the value of the security for such Allowed Claim, also as determined by the Bankruptcy Court.

Upon the Effective Date of the Plan, the Foreclosure Action shall be suspended or dismissed, without prejudice, so long as payments are being made in accordance with the above provisions. Lehigh may commence or reinstate the Foreclosure Action if Reorganized Saucon Valley Manor, Inc. defaults in its payment obligations to Lehigh under the Plan.

Until payment is made as set forth in a., b., c. or d. above, Lehigh shall retain its security interests in all assets of Saucon Trust, in the same priority and to the same extent as they existed on the Petition Date.

This claim is impaired.

K. **CLASS 11 – <u>Secured Claim of Whitehall Condominium against Whitehall Trust</u>**.

Whitehall Condominium asserts a secured claim against Whitehall Trust in an amount presently undetermined. Contingent on reversal of the Dismissal Order and Confirmation of the Plan, upon the Effective Date, Whitehall Condominium will waive distribution on account of its Class 11 Claim, adding the amount of its Class 11 Claim to the contribution being made by Abraham Atiyeh under the Plan. In the event that the Dismissal Order is affirmed in the Dismissal Order Appeal, this class will be deemed stricken from the Plan and of no effect and no payments will be made on account of the Class 11 claims under the Plan.

This claim is impaired, but is an Insider Claim that is not entitled to vote in favor of or against the Plan

This claim is impaired.

L. **CLASS 12 - <u>Priority Unsecured Claims</u>.**

Class 12 consists of miscellaneous Priority Unsecured Claims against Debtor Whitehall Manor, Inc. (Class 12A), Debtor Whitehall Trust, Inc. (Class 12B, Debtor Saucon Valley Manor, Inc. (Class 12C) and Debtor Saucon Trust (Class 12D) and such claims are Unimpaired. Each Holder of an Allowed Class 12 Priority Unsecured Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim: (a) the amount of such unpaid Allowed Claim on or as soon as reasonably practicable after the later of (i) the Effective Date,

#125633015v1

(ii) the date on which such Class 12 Priority Unsecured Claim becomes Allowed, and (iii) a date agreed to by the and the Holder of such Class 12 Priority Unsecured Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the applicable Debtor.

The Debtors are unaware of any Unsecured Priority Claims other than the priority unsecured claims asserted by the City of Philadelphia for wage taxes in the amount of $0.00.

This class is unimpaired.

M. **CLASS 13 – <u>Unsecured Contract Claims of Trade Vendors</u>.**

Class 13 Unsecured Contract Claims of Trade Vendors against Debtor Whitehall Manor, Inc. (Class 13A), Debtor Whitehall Trust, Inc. (Class 13B, Debtor Saucon Valley Manor, Inc. (Class 13C) and Debtor Saucon Trust (Class 13D) are Impaired. Each Holder of an Allowed Class 13 Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim the assumption of its contract by the applicable Debtor in exchange for the Claim Holder's waiver of all prepetition amounts owed by the applicable Debtor under such contract in excess of 2% of the total amount owed, which 2% shall be paid from the Distribution Account. To the extent that a Holder of a Claim involving a trade vendor contract does not agree to the treatment proposed for Class 13 Claims, such Claim shall be treated as a Class 14 Claim against the applicable Debtor and its contract with the applicable Debtor rejected under the Plan.

This class is impaired.

N. **CLASS 14 – <u>General Unsecured Vendor and Service Provider Claims</u>.**

Class 14 General Unsecured Vendor and Service Provider Claims against Debtor Whitehall Manor, Inc. (Class 14A), Debtor Whitehall Trust, Inc. (Class 14B, Debtor Saucon Valley Manor, Inc. (Class 14C) and Debtor Saucon Trust (Class 14D) are Impaired. Each Holder of an Allowed Class 14 Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim, a 2% distribution on account of such Claim from the Distribution Account.

O. **CLASS 15 – <u>Unsecured Deficiency Claim of Lehigh Valley 1, LLC</u>.**

Class 15 Claims include the deficiency claim of Lehigh against Whitehall Manor, Inc. (Class 15A), Debtor Whitehall Trust, Inc. (Class 15B), Debtor Saucon Valley Manor, Inc. (Class 15C) and Debtor Saucon Trust (Class 15D). Class 15 claims are Impaired. Following the date on which the Unsecured Deficiency Claim becomes Allowed, such Claim shall receive fixed, equal monthly distributions from the aggregate Net Operating Revenue of Reorganized Whitehall Manor, Inc. and Reorganized Saucon Valley Manor, Inc., respectively, in addition to the monthly Debt Service Payments being made on account of Lehigh's Classes 7, 8, 9 and 10 Secured Claims

until Lehigh shall have received a total of 2%, plus interest at the rate of Prime plus 1%, of the amount of its Allowed Class 15 Claims, provided, however, that in the event that Lehigh elects to receive a lump sum on the Effective Date as provided in Classes 7, 8, 9 and 10, or Lehigh makes an election under Section 1111(b) of the Bankruptcy Code, Class 15 will receive no distribution under the Plan and Class 15 will be deemed stricken from the Plan.

### P. **CLASS 16 – <u>Convenience Class Claims</u>**.

Class 16 consists of Convenience Class Claims against Debtor Whitehall Manor, Inc. (Class 16A), Debtor Whitehall Trust, Inc. (Class 16B, Debtor Saucon Valley Manor, Inc. (Class 16C) and Debtor Saucon Trust (Class 16D) are Impaired. On the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 16 Convenience Class Claim shall receive in Cash from the Distribution Account 48% of the Allowed amount of such Claim from the Creditor Fund.

### Q. **CLASS 17 – <u>Interests</u>**.

Class 17 interests are Unimpaired. Class 17 consists of the ownership and equity interests held in each of the Debtor entities. In exchange for Abraham Atiyeh's funding of the Distribution Account, waiver of distributions on account of the DIP Financing Facility and Class 12 Claims, and commitment to provide future services to the Reorganized Debtors following the Effective Date on terms at least as favorable as those that existed on the Petition Date, the equity and ownership interests of the persons and entities holding interests in the Debtors shall be reinstated in the Reorganized Debtors to the same extent as existed as of the Petition Date.

This class is not impaired but is an insider class not entitled to vote in favor of or against the Plan.

### R. **CLASS 18 - <u>Insider Claims</u>**.

Class 18 Insider Claims are Impaired and deemed to reject the Plan. Class 18 Claims include all Allowed unsecured Insider and Intercompany Claims except for the DIP Financing Facility and Claims in Class 11. Holders of Class 18 Insider Claims shall not receive or retain any property under the Plan on account of such Insider Claims. On the Effective Date, all Insider Claims shall be extinguished.

### ARTICLE IV
### <u>ACCEPTANCE OR REJECTION OF THE PLAN</u>

**4.01.** <u>Acceptance by Impaired Classes of Claims and Interests</u>. Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if: (a) the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan, and (b) more than one-half (1/2) in number of the Holders of such Allowed Claims actually voting in such Class (other

than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan. No Class of Interests is entitled to vote on the Plan pursuant to section 1126 of the Bankruptcy Code.

**4.02.** Voting Classes. Except as otherwise required by the Bankruptcy Code or the Bankruptcy Rules or as otherwise provided in this Section 4.02, the Holders of Claims in Classes 1, 2, 3, 4, 5, 7. 8. 9. 10, 13, 14, 15, and 16 (inclusive of all subclasses) shall be entitled to vote to accept or reject the Plan in accordance with Section 4.01 of the Plan. Classes of Claims Unimpaired under the Plan (Classes 6 and 12) shall not be entitled to vote to accept or reject the Plan and shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. The Class of Interests and Class of Claims that are Impaired under the Plan and whose Holders neither receive nor retain any property on account of such Claims and Interests under the Plan - Whitehall Condominium Claim (Class 11), and Insider Claims (Class 18) shall not be entitled to vote to accept or reject the Plan and shall be conclusively presumed to have rejected the Plan. Administrative Claims and Priority Tax Claims are Unimpaired and not classified under the Plan and hence are not entitled to vote to accept or reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**4.03.** Ballot Instructions. Each Holder of a Claim or Interest entitled to vote on the Plan will be asked to complete and return a Ballot to the Voting Agent, which will compile the votes so received. Any questions as to the validity, form, and eligibility (including time of receipt) of Ballots will be resolved by the Bankruptcy Court upon application or at the hearing on Confirmation of the Plan.

**4.04.** Cramdown. If all applicable requirements for Confirmation of the Plan are met as set forth in section 1129(a)(1) through (13) of the Bankruptcy Code except subsection (8) thereof, the Debtors may request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of section 1129(a)(8) thereof, on the bases that the Plan is fair and equitable, and does not discriminate unfairly, with respect to each Class of Claims or Interests that is Impaired under, and has not accepted, the Plan.

.

## ARTICLE V
### EXECUTORY CONTRACTS & UNEXPIRED LEASES; INDEMNIFICATION OBLIGATIONS

**5.01.** Treatment of Executory Contracts and Unexpired Leases. All executory contracts and unexpired leases of the Debtors shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease that: (a) has previously been assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court on or prior to the Confirmation Date, (b) is the subject of a pending motion to assume, assume and assign, or reject as of the Confirmation Date, or (c) is listed on the Schedule of Assumed Contracts, provided, however, that the Debtors shall have the right, at any time prior to the Confirmation Date, to amend the Schedule of Assumed Contracts in any manner or by any means approved by the Bankruptcy Court or to delete any executory contract or unexpired lease listed therein, thus providing for its

rejection pursuant to this Section 5.01 or to add any executory contract or unexpired lease thereto, thus providing for its assumption and assignment pursuant to this Section 5.01.

**5.02.** Cure of Defaults for Assumed Contracts and Leases.  The Cure of all defaults under executory contracts and unexpired leases to be assumed and/or assigned, including the resolution of all objections to the adequacy of assurance of future performance under such contracts and leases and as to the adequacy of amounts proposed to cure defaults under such contracts and leases, shall be governed by agreement of the parties thereto and/or orders of the Bankruptcy Court.  All such Cure amounts shall be satisfied by the Debtors as provided in the Plan.

**5.03.** Bar Date for Claims for Rejection Damages Claims.  Claims arising out of the rejection of any executory contract or unexpired lease pursuant to Article V of the Plan must be filed with the Bankruptcy Court no later than the Rejection Bar Date.  Any Claim not filed within such time period shall be forever barred.  The Debtors shall have the right to object to any Claim arising out of the rejection of an executory contract or unexpired lease.

**5.04.** Treatment of Rejection Claims.  The Bankruptcy Court shall determine any objections filed in accordance with Article X hereof at a hearing to be held on a date to be determined by the Bankruptcy Court.  Subject to any statutory limitation, including, but not limited to the limitations contained in sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code, any Rejection Damages Claims shall, pursuant to section 502(g) of the Bankruptcy Code, be Impaired and treated as Class 14 Claims in accordance with Section 3.02 N. of the Plan.

**5.05.** Executory Contracts and Unexpired Leases Entered into and Other Obligations Incurred After the Petition Date.  On the Effective Date, all contracts, leases, and other agreements entered into by any or all of the Debtors on or after the Petition Date that have not been terminated in accordance with their terms on or before the Effective Date shall be deemed assumed by the Debtors.Categories of Executory Contracts and Unexpired Leases to be Assumed.  Pursuant to sections 365 and 1123 of the Bankruptcy Code, each of the executory contracts and unexpired leases within the following categories shall be deemed assumed as of the Effective Date (and the Proposed Cure with respect to each shall be zero dollars), except for any executory contract or unexpired lease (i) that has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (ii) that is the subject of a motion to assume or reject pending on the Confirmation Date, (iii) that is listed on Schedule 5.06(a) or 5.06(b), (iv) that is otherwise expressly assumed or rejected pursuant to the terms of this Plan or (v) as to which a Treatment Objection has been filed and properly served by the Treatment Objection Deadline.

A. Insurance Plans.  Subject to the terms of the first paragraph of this Section 5.06 each Insurance Plan shall be deemed assumed effective as of the Effective Date.  Nothing contained in this Section 5.06 A. shall constitute or be deemed a waiver of any Cause of Action that a Debtor may hold against any entity, including, without limitation, the insurer under any of the Debtors' Insurance Plans.

B. Certain Indemnification Obligations.  Each indemnification obligation to a director, officer or employee that was employed by a Debtor in such capacity on or after the Petition Date shall be deemed assumed effective as of the Effective Date; provided, however, that any indemnification obligation contained in an Employee Agreement that is rejected pursuant to

the Plan or by order of the Bankruptcy Court shall also be deemed rejected.  Each indemnification obligation that is deemed assumed pursuant to the Plan shall (i) remain in full force and effect, (ii) not be modified, reduced, discharged, impaired or otherwise affected in any way, (iii) be deemed and treated as an executory contract pursuant to sections 365 and 1123 of the Bankruptcy Code regardless of whether or not Proofs of Claim have been filed with respect to such obligation and (iv) survive Unimpaired and unaffected irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date.

Notwithstanding anything contained in this Plan, the Debtors may in their sole discretion (but have no obligation to) honor each indemnification obligation to a director, officer or employee that was no longer employed by a Debtor in such capacity on or after the Petition Date, unless such obligation (i) shall have been previously rejected by a Debtor by Final Order of the Bankruptcy Court, (ii) is the subject of a motion to reject pending on or before the Confirmation Date, (iii) is listed on Schedule 5.06(b)) or (iv) is otherwise expressly rejected pursuant to the terms of the Plan or any Notice of Intent to Assume or Reject.

C. License Agreements.  Subject to the terms of the first paragraph of this Section 5.06, any and all License Agreements pursuant to which Debtors operate their facilities shall be deemed assumed effective as of the Effective Date.  Nothing contained in this Section 5.06 C. shall constitute or be deemed a waiver of any defense or Cause of Action that a Debtor may hold against any individual or entity, including, without limitation, any counterparty to a License Agreement.

**5.07.** Other Categories of Agreements and Policies.

A. Employee Agreements.  Pursuant to sections 365 and 1123 of the Bankruptcy Code, each Employee Agreement entered into prior to the Petition Date with an employee who was employed by a Debtor on the Petition Date and remains employed by a Debtor on the Effective Date in the same capacity, shall be deemed assumed effective as of the Effective Date, except for any Employee Agreement (i) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) that is the subject of a motion to assume or reject pending on the Confirmation Date, (iii) that is listed on Schedule 5.06(a) or 5.06(b) of the Plan, (iv) that is otherwise expressly assumed or rejected pursuant to the terms of the Plan, or (v) as to which a Treatment Objection has been filed and properly served by the Treatment Objection Deadline.

The Debtors may execute new or amended Employee Agreements with certain of their employees on or before the Confirmation Date.

B. Employee Benefits. As of the Effective Date, whether or not such employee benefits are provided for in an Employee Agreement that has been rejected in the Chapter 11 Case (by operation of this Plan or otherwise), the Debtors, in their sole and absolute discretion, may honor, in the ordinary course of business, the Debtors' written contracts, agreements, policies, programs and plans for, among other things, compensation, health care benefits, disability benefits, severance benefits, retirement benefits, welfare benefits, relocation programs, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs and plans for bonuses and other incentives or compensation for the directors, officers and employees of the Debtors who served in such capacity at any time.  To the extent that the

above-listed contracts, agreements, policies, programs and plans are executory contracts, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless a Treatment Objection is timely filed and properly served, each of them will be deemed assumed (as modified or terminated) as of the Effective Date with a Cure of zero dollars.  However, notwithstanding anything else herein, at the discretion of the Debtors, the assumed plans shall be subject to modification in accordance with the terms thereof.

C. All agreements with Persons residing at the Debtor Manors or otherwise receiving services from the Debtor Manors pursuant to contract.

D. The Debtors reserve the right to supplement the list by attaching a Schedule of Executory Contracts.

**5.08.** Approval of Assumption, Rejection, Retention or Assignment of Executory Contracts and Unexpired Leases. Entry of the Confirmation Order by the Bankruptcy Court shall, subject to the occurrence of the Effective Date, constitute approval of the rejections, retentions, assumptions and/or assignments contemplated by this Plan pursuant to sections 365 and 1123 of the Bankruptcy Code.

Each executory contract and unexpired lease that is assumed (and/or assigned) pursuant to the Plan shall vest in and be fully enforceable by the Debtors in accordance with its terms, except as modified by the provisions of this Plan, any order of the Bankruptcy Court authorizing or providing for its assumption (and/or assignment), or applicable federal law.

The provisions (if any) of each executory contract or unexpired lease assumed and/or assigned pursuant to the Plan that are or may be in default shall be deemed satisfied in full by the Cure, or by an agreed-upon waiver of the Cure.  Upon payment in full of the Cure, any and all Proofs of Claim based upon an executory contract or unexpired lease that has been assumed in these Chapter 11 Cases or under the terms of the Plan shall be deemed disallowed and expunged with no further action required of any party or order of the Bankruptcy Court.

**5.09.** Modifications, Amendments, Supplements, Restatements or Other Agreements. Unless otherwise provided by this Plan or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed, whether or not such executory contract or unexpired lease relates to the use, acquisition or occupancy of real property, shall include (i) all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease and (ii) all executory contracts or unexpired leases appurtenant to the premises, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements and any other interests in real estate or rights in remedy related to such premises, unless any of the foregoing agreements has been or is rejected pursuant to an order of the Bankruptcy Court or is otherwise rejected as part of the Plan.  Notwithstanding the foregoing, the Debtors acknowledge that the 2023 amendments to the Leases were voided by the District Court and, for purposes of the Plan, such amendments are not treated by the Debtors as being valid.

Modifications, amendments, supplements and restatements to pre-petition executory contracts and unexpired leases that have been executed by the Debtors during the Chapter 11 Cases and actions taken in accordance therewith (i) do not alter in any way the pre-petition nature of the executory contracts and unexpired leases, or the validity, priority or amount of any Claims against the Debtors that may arise under the same, (ii) are not and do not create post-petition contracts or leases, (iii) do not elevate to administrative expense priority any Claims of the counterparties to the executory contracts and unexpired leases against any of the Debtors and (iv) do not entitle any entity to a Claim under any section of the Bankruptcy Code on account of the difference between the terms of any pre-petition executory contracts or unexpired leases and subsequent modifications, amendments, supplements or restatements.

## ARTICLE VI
## TAX AND CORPORATE IMPLICATIONS

The Debtors may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any governmental unit.  If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification to the Holder of the need for such information necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable Distribution in accordance with this Plan.  For all Distributions treated as taxable wages to former employees, the employees will be considered employed by the Debtors and such wages will be reported to the appropriate governmental entities solely under the applicable Debtor's federal identification number.

The Debtors Whitehall Manor, Inc. and Saucon Valley Manor, Inc. will remain corporations and will continue to be taxed as corporations.  Pursuant to Section 1123(a)(5)(C) of the Bankruptcy Code and in accordance with Pennsylvania law, on the Effective Date of the Plan or as soon as practical thereafter, in the event that the Dismissal Order Appeal results in the reversal of the Dismissal Order, Debtor Whitehall Trust will be merged into Debtor Whitehall Manor, Inc. and Debtor Saucon Trust will be merged into Debtor Saucon Valley Manor, Inc., with Whitehall Manor, Inc. and Saucon Valley Manor, Inc., respectively, being the surviving entities. In the event that the Dismissal Order Appeal results in an affirmance of the Dismissal Order, Whitehall Trust will remain a registered Business Trust under Pennsylvania law and Saucon Trust will remain a registered Business Trust under Pennsylvania law.  Whitehall Trust and Saucon Trust reserve the right to change the form of their respective entities at any time in accordance with Pennsylvania law.

The Confirmation of the proposed Plan may not generate income for Holders of Claims. Holders of Claims will report income or loss based upon the extent of their collection of their Allowed Claims. Holders of Claims will ultimately recognize deductions or income based upon the tax basis they each have in their respective Claims against the Debtors.

All Holders of Claims and Equity Interests are urged to consult their tax advisors concerning the federal, state, local, and other tax consequences applicable under the Plan.

#125633015v1                                                    34

## ARTICLE VII
## POST-CONFIRMATION MANAGEMENT

Claims under this Plan will be paid from income generated by the Debtors from ongoing operations as well as an infusion of Cash by the Debtors' principal, Abraham Atiyeh, comprising the Creditor Fund.

Post-Confirmation, in exchange for continuing to provide goods and services to the Debtors on terms at least as beneficial to the Debtors as existed on the Petition Date, for providing the DIP Facility to fund the Debtors' operations pending confirmation of the Plan, for waiving distributions on account of the DIP Financing Facility and Whitehall Condominium Claims to the extent provided in the Plan, and for funding the Creditor Fund, Abraham Atiyeh and his business entities, as applicable, shall be issued equity and ownership interests in the Reorganized Debtors on the Effective Date that are equivalent to those interests in as held in the Debtors prior to the Effective Date.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

**8.01.** Timing of Distributions Except as specifically set forth in the Plan, distributions will be made to Holders of Allowed Claims in accordance with Article III of the Plan. If a Claim is not an Allowed Claim as of the applicable distribution date, distributions will be made only if and when the Claim is Allowed, and then in accordance with Article VIII of the Plan and, with respect to the cure of defaults for assumed executory contracts and unexpired leases, Section 5.02 of the Plan, and in each case, subject to Article VIII of the Plan. Distributions to be made as of the Effective Date on account of Claims that are Allowed as of the Effective Date and are entitled to receive distributions under the Plan shall be made on the Effective Date or as soon as reasonably practicable thereafter. Distributions to be made after the Effective Date shall be made on dates to be established by the Debtors pursuant to the terms of this Plan, taking into account the resolution of Disputed Claims and the Debtors' right to defer distributions if the amount to be distributed on a particular date is insufficient to justify the costs of effectuating the distribution.

**8.02.** Distributions to Holders of Allowed Claims. Except as otherwise provided herein, the Debtors shall make all distributions required under the Plan in a manner consistent with the Plan. Distributions to Holders of Allowed Claims will be made in accordance with Article III of the Plan. On or before the Effective Date, Abraham Atiyeh shall deliver to Debtors' counsel the portion of the Creditor Fund to be distributed to Holders of Claims in Classes 13, 14 and 16 and, in the event that Lehigh elects option b in classes 7 and 8, then the Initial Lehigh Payment, who will deposit such funds into an interest bearing escrow account that shall become the Distribution Account on the Effective Date of the Plan. From the Distribution Account, the Debtors will make distributions in accordance with the Plan. If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any distribution, the Debtors shall, as appropriate and in lieu of making such distribution to such Holder, delay such distribution until the disposition thereof shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute.

**8.03.** Distribution Account. One or more Distribution Accounts shall be established by the Debtors to receive the funds necessary to fund payments to be made on the Effective Date of the Plan. On, or as soon as reasonably practicable after, the Effective Date, the Debtors shall make distributions from the Distribution Account in accordance with the Plan (collectively, the "Distribution Account Claims"). Each Distribution Account shall be extinguished following payment of all distributions made therefrom in accordance with the Plan.

**8.04.** Delivery of Distributions. Distributions to Holders of Allowed Claims shall be made by the Debtors: (a) at the last known addresses of such Holders or (b) at the addresses set forth in any written notices of address changes delivered to the Debtors. If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Debtors are notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest.

**8.05.** Method of Cash Distributions. Any payment to be made pursuant to the Plan may be made by check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of the Debtors.

**8.06.** Failure to Negotiate Checks. Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within ninety (90) days after the date of issuance. Any amounts returned to the Debtors in respect of such non-negotiated checks shall be forwarded to (if necessary) and held by the Debtors. Requests for reissuance for any such check shall be made directly to the issuer of the check by the Holder of the Allowed Claim with respect to which such check originally was issued. All amounts represented by any voided check will be held until the earlier of: (a) one (1) month after date on which the check is voided, or (b) the date on which the Bankruptcy Court enters the Final Decree, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to such date. Thereafter, all such amounts shall be deemed to be unclaimed property, in accordance with Section 8.07 of the Plan, and all Holders of Claims in respect of void checks shall be forever barred, estopped and enjoined from asserting a claim to such funds in any manner against the Debtor or their respective Assets.

**8.07.** Unclaimed Distributions. All Cash distributed on account of Claims must be claimed prior to the date on which the Bankruptcy Court enters the Final Decree, or, in the case of a Distribution made in the form of a check, must be negotiated and a request for reissuance be made as provided for in Section 8.06 of the Plan. All unclaimed property, as of the date on which the Final Decree is entered shall be retained by and will revert to the Debtors. All full or partial payments made by the Debtors and received by the Holder of a Claim prior to the Effective Date will be deemed to be payments under the Plan for purposes of satisfying the obligations of the Debtors pursuant to the Plan. Nothing contained in the Plan shall require the Debtors to attempt to locate any Holder of an Allowed Claim other than by reviewing the records of the Debtors and any Claims filed in the Chapter 11 Cases. Pursuant to section 1143 of the Bankruptcy Code, all Claims in respect of unclaimed property shall be deemed disallowed and the Holder of any Claim disallowed in accordance with this Section 8.07 will be forever barred, expunged, estopped and enjoined from asserting such Claim in any manner against the Debtors, or their respective assets.

**8.08.** <u>Limitation on Distribution Rights</u>.  If a claimant holds more than one Claim in any one Class, all Claims of the claimant in that Class will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

**8.09.** <u>Compliance With Tax Requirements</u>. In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Debtors shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Debtors within thirty (30) days from the date of such request, the Debtors at their options, may withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

**8.10.** <u>De Minimis Distributions</u>. No payment of less than one ($1.00) dollar shall be made to any Holder of an Allowed Claim on account of such Allowed Claim.

**ARTICLE IX**
**<u>IMPLEMENTATION OF THE PLAN</u>**

**9.01.** <u>Distributions/Objections to Claims/Establishment of Disputed Claims Reserve.</u>

A. <u>General</u>.  The Debtors shall make one or more Distributions to Creditors as set forth herein.  The Debtors shall establish a Disputed Claims Reserve with funds sufficient to pay Disputed Claims in full or pari passu with claims of the same class and priority until a Final Order has been entered by the Bankruptcy Court with respect to such Disputed Claim.  To the extent such claim is ultimately allowed, the related reserved funds shall thereafter be released and the claim will be paid on the next scheduled Distribution.  To the extent such claim is disallowed, the Disputed Claims Reserve shall be reduced and the reserved funds shall then be made available for the next Distribution.  The Disputed Claims Reserve shall be organized into separate, segregated sub-accounts for administrative, priority, and general unsecured claims.

B. <u>First Distribution</u>. The First Distribution shall be for all unpaid Allowed Administrative Claims, Allowed claims in Classes 12, 13, 14, 16 and the Initial Lehigh Payment or the Cash Out Payment, as the case may be, in order of priority and subject to the contingency reserve set forth below.   This distribution will be made on the Effective Date from the Distribution Account.  Payment on Disputed Administrative Claims and Disputed Claims will be deferred until the parties reach agreement or the Court has entered a Final Order with respect to such Disputed Claims.

C. <u>Establishment of Contingency Reserve</u>. The Debtors shall establish a contingency Reserve with funds reasonably sufficient for the Debtors to (i) pay Administrative Claims of the Estate including Professional Fees of the Debtors, and the Receiver if the Dismissal Order Appeal results in a reversal of the Dismissal Order; (ii) meet contingent liabilities and to maintain the value of the Assets during reorganization and Distribution of the Assets; and (iii) satisfy other liabilities incurred by the Debtors in accordance with the Plan.  For purposes of

establishing this reserve, the Debtors shall consider and reserve for projected amounts believed by estate professionals and other Administrative Claimants to be due as of the Effective Date. Surplus funds, if any, in this reserve will be distributed during the Final Distribution. In the event that the Dismissal Order Appeal results in a reversal of the Dismissal Order, the Debtors intend that the amounts held in Escrow by the Receiver would become part of the Distribution Account under the Plan that is used to pay Administrative Claims (including fees of the Receiver in the event that the Dismissal Order is reversed) and other Classes of Claims being paid from the Distribution Account, subject to further order of the Bankruptcy Court.

D. Interim Distributions. The Debtors may make Distributions subsequent to the First Distribution but in no event more frequently than at 30 day intervals from and after the Effective Date and prior to the Final Distribution. Such interim Distributions shall be made on account of Claims that were formerly Disputed but have become Allowed by Final Order of the Bankruptcy Court; Administrative Claims allowed by the Court post-Effective Date; and costs and expenses incurred by the Debtors post-Effective Date, which costs and expenses are evidenced by invoices for services rendered in the case of Professionals employed by the Debtors and any agreement between the Debtors and any employees, consultants or others retained by the Debtors post-Effective Date. These Distributions shall be made from the Disputed Claims Reserve and contingency reserve respectively. Distributions to Classes 1, 2, 3, 4, 5, 7, 8, 9, 10 and 15, except with respect to Classes 7, 8, 9, 10 and 15 in the event that Lehigh elects the Cash Out Option or, as to Classes 9, 10 and 15, if the Dismissal Order Appeal results in an affirmance of the Dismissal Order, shall be made on an interim basis on or before the 15th day of each calendar month following the Effective Date of the Plan from the Net Operating Revenue until such Classes receive payment of their respective Claims as provided by the Plan.

E. Final Distribution. The Final Distribution will be made available to all remaining unpaid Allowed Claims in accordance with the absolute priority rule and the provisions of this Plan, after payment of reasonable post-Effective Date costs and expenses of the Debtors. The Distribution will be Pro Rata for all claimants of equal priority whenever funds are insufficient to pay such claims in full.

**9.02.** Discharge of the Patient-Care Ombudsman and Receiver.

Unless previously discharged, on the Effective Date, the Patient-Care Ombudsman shall be discharged of her duties and obligations to the Estate. Unless previously discharged, on the Effective Date, subject to any determination by the District Court, the Receiver shall be discharged of her duties and obligations to the Estate.

**9.03.** Securities Exempt.

The conveyance of the beneficial rights to distribution from the Assets satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

**9.04.** Closing of the Chapter 11 Cases.

#125633015v1                                          38

At such time as the Debtors deem appropriate, after all adversary actions have been filed, and after all pending appeals have been resolved, the Debtors may seek authority from the Bankruptcy Court to close the Chapter 11 Cases.  Closure of the bankruptcy cases shall not affect any pending adversary action.

**9.05.** Binding Effect.

Except as otherwise provided in section 1141(a) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind the Plan Proponents, any Holder of a Claim against the Debtors and their successors and assigns, whether or not the Claim of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan.

**9.06.** Term of Injunctions or Stays.

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Cases.

**9.07.** Causes of Action.

On and after the Effective Date, and except as set forth herein, the Debtors shall have the exclusive right to prosecute and enforce any and all Causes of Action, including but not limited to past, present or future rights, claims or causes of action against any Person and rights of the Debtors or Estate that arose prior to or after the Effective Date pursuant to Section 1123(b) of the Bankruptcy Code.

**9.08.** Final Satisfaction of Claims.

The rights afforded by this Plan and the treatment provided herein of Claims and against the Debtors shall be in exchange for and in satisfaction and release of all Claims against the Debtors of any nature whatsoever, including any interest, judgments on penalties accrued or expenses incurred against the Debtors in respect thereof from and after the Petition Date of the Debtors, and their estate, properties and interests in properties.

**9.09.** Setoffs.

The Debtors, exercising their rights, may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Claim (before any Distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtors may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claims, rights and causes of action that the Debtors may possess against such Holder.

## ARTICLE X
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**10.01.** Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, upon the Effective Date and thereafter, the Debtors shall have the exclusive right to make and file objections to Claims at any time prior to the Claims Objection Deadline.

Except as set forth herein, nothing in the Plan, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Cause of Action, including but not limited to, any right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the commencement of these Chapter 11 Cases, against or with respect to any Claim.  Except as set forth herein, upon Confirmation, the Debtors shall have and be entitled to assert all Causes of Action and defenses which the Debtors had immediately prior to the commencement of these Chapter 11 Cases fully as if the Chapter 11 Cases had not been commenced.   THE FAILURE TO OBJECT TO ANY CLAIM PRIOR TO THE COMMENCEMENT OF THE HEARING ON CONFIRMATION OF THE PLAN SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO OBJECT THEREAFTER TO SUCH CLAIM IN WHOLE OR IN PART FOR THE PURPOSE OF DISTRIBUTION.

**10.02.** Estimation of Claims.

The Debtors may, at any time, request that the Bankruptcy Court estimate any Disputed, contingent or unliquidated Claim regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection.

In the event that the Bankruptcy Court estimates any Disputed, contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.   All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**10.03.** Allowance of Claims and Interests.

Except as expressly provided in the Plan, no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim.

**10.04.** Controversy Concerning Impairment.

If a controversy arises as to whether any Claims of any Class of Claims are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.

## ARTICLE XI
## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**11.01.** Conditions Precedent to Confirmation.

The Plan will not become effective unless and until the following conditions will have been satisfied:

- the Confirmation Order, shall have been signed by the Judge presiding over the Chapter 11 Cases and there shall not be a stay or injunction in effect with respect thereto;

- the Dismissal Order Appeal shall have been resolved by final order that is not subject to appeal or reconsideration/

- to the extent that Lehigh elects the Cash Out Payment Option, the financing being obtained by Abraham Atiyeh to fund such Option has closed;

- all actions, documents and agreements necessary to implement the Plan shall have been effected or executed; and

- the Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents that are determined by the Debtors to be necessary to implement the Plan.

**11.02.** Waiver of Conditions.

The Debtors may waive any of the conditions to Confirmation or the occurrence of the Effective Date of the Plan, in whole or in part, set forth herein at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to obtain Confirmation or the occurrence of the Effective Date.

**11.03.** Effect of Non-Occurrence of Conditions to Effective Date.

If the Confirmation Order is vacated, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, the Debtors; (b) prejudice in any manner the rights of the Debtors, or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtors in any respects.

## ARTICLE XII
## EXCULPATION, INJUNCTION, AND RELATED PROVISIONS

**12.01.** Preservation of Causes of Action.

Except as otherwise provided in the Plan or in any contract, instrument, release or agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall retain and may exclusively prosecute and enforce any Causes of Action, Avoidance Actions, Actions against D&O's or actions involving any other Person or Entity that the Debtors or their Estate may have against any Person or Entity and retains under the Plan.  The Debtors may pursue or release such Causes of Action, Avoidance Actions, Actions against D&O's or actions involving any Person or Entity in accordance with the best interests of the beneficiaries of the Estate.

**12.02.** Compromise and Settlement of Claims and Controversies.

Pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019 and in consideration for the classification, Distributions, releases, and other benefits provided pursuant to the Plan, on the Effective Date, the provisions of Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan or relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Claim or Interest, or any Distribution to be made on account of such Claim or Interest. The entry of the Confirmation Order shall constitute the Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Court that such compromise or settlement is in the best interests of the Debtors, their Estate, and Holders of Claims and Interests and is fair, equitable and reasonable.

**12.03.** Binding Effect.

The Plan shall be binding upon and inure to the benefit of the Debtors and Plan Proponents, all present and former Holders of Claims and Interests, whether or not such Holders shall receive or retain any property or interest in property under the Plan, and their respective successors and assigns, including, but not limited to all parties-in-interest in the Chapter 11 Cases.

**12.04.** Discharge of the Debtors.

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims, Interests, and causes of action in or against any Debtor, its assets or property of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, contingent or noncontingent, or liquidated or unliquidated, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, Interests or Causes of Action, that arose or accrued before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such Claim, debt, right, Cause of Action or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt or right is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Unless expressly provided in the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

**12.05.** <u>Debtor Releases</u>.

**Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, their Estates, and the Debtors' current affiliates, successors and assigns, including any successor to the Debtors or any Estate representative appointed or selected pursuant to Bankruptcy Code section 1123(b)(3), shall forever release, waive, and discharge each of the Released Parties from any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy, liability, action, proceeding, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, or right to payment, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, for any act or omission in connection with, relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' operations, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, or the Plan, and the administration, formulation, preparation, dissemination, solicitation, negotiation, consummation, and implementation of any of the foregoing or any contract, instrument, release, or other agreement, understanding, accord, course of dealing, or document created or entered into in connection with or evidencing any of the foregoing, whether or not accrued, arising or having occurred, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, mixed, or otherwise, that may be based in whole or part on any act, omission, transaction, agreement, understanding, course of dealing, event or other occurrence or omission taking place on or prior to the Effective Date.**

**12.06.** <u>Exculpation and Limitation of Liability</u>.

**Except as otherwise specifically provided herein, the Exculpated Parties shall not have or incur, and are hereby released and exculpated from, any liability, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured and whether asserted or assertable directly or derivatively in law or equity, to any Holder of a Claim or an Interest, or any other party-in-interest, or any of their respective members, directors, officers, managers, trustees, employees, advisors, attorneys, professionals, agents, partners, stockholders or affiliates, or any of their respective successors or assigns, for any act or omission in connection with, relating to or arising out of, the Chapter 11 Cases, the formulation, negotiation, or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct (in each case as determined by a Final Order entered by a court of competent jurisdiction), and such parties in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities**

**under the Plan. For the avoidance of doubt, nothing contained in this paragraph shall exculpate acts or omissions prior to the Petition Date or post-Effective Date.**

**12.07.** Injunction.

**Effective as of the Effective Date, all Persons and Entities that hold, have held, or may hold a claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy, action, proceeding, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, or right to payment, or liability of any nature whatsoever, that is released, exculpated, compromised, or settled pursuant to this Plan, shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum against or affecting the Debtors or any of their respective property; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order against the Debtors or any of their respective property; (iii) creating, perfecting, or in any way enforcing in any manner, directly or indirectly, any encumbrance or Lien of any kind against the Debtors or any of their respective property; (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the Debtors or any of their respective property, except with respect to any right of setoff asserted prior to the entry of the Confirmation Order, whether asserted in a Proof of Claim or otherwise, or as otherwise contemplated, impaired, or allowed by the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (vi) prosecuting or otherwise asserting (A) any Claim or Interest, including any right, claim, or Cause of Action released pursuant to the Plan, (B) any form of objection to any Claim that is Allowed by the Plan and Confirmation Order, or (C) Avoidance Actions against any Holder of a Claim that is Allowed or any Avoidance Action released by the Plan.**

### ARTICLE XIII
### MISCELLANEOUS PROVISIONS

**13.01.** Retention of Jurisdiction. The Court shall retain jurisdiction for the following purposes:

A. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests.

B.  Resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim objections, allowance, disallowance, subordination, estimation and distribution.

#125633015v1                                    44

C.  Decide and resolve all matters related to the granting and denying, in whole or in part of, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan.

D.  Resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any cure amount arising therefrom; and/or (b) any dispute regarding whether a contract or lease is or was executory or expired.

E.  Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date.

F.  Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

G.  Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters.

H.  Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement.

I.  Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan.

J.  Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan.

K.  Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

L.  Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

M.  Determine any other matters that may arise in connection with or related to the Debtors' use of cash collateral, the Disclosure Statement, the Plan, and the Confirmation Order, and DIP Order.

N.  Ensure that distributions to Holders of Allowed Claims or Allowed Interests are accomplished pursuant to the provisions of the Plan.

O.  Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by any Holder for amounts not timely repaid.

P.  Adjudicate any and all disputes arising from or relating to distributions under the Plan.

Q.  Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order.

R.  Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order.

S.  Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

T.  To recover all assets of the Debtors and property of the Debtors' Estates, wherever located.

U.  To hear and determine any other rights, claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or any applicable state or federal statute or legal theory.

V.  Enter an order or final decree concluding or closing the Chapter 11 Cases.

W.  Enforce all orders previously entered by the Bankruptcy Court.

X.  Hear any other matter over which the Bankruptcy Court has jurisdiction.

**13.02.** Pending Litigation. As of the Filing Date, the following lawsuits/administrative proceedings were pending involving the Debtors:

a. *Lehigh Valley 1, LLC v. Whitehall Fiduciary, LLC*, *as Trustee of Whitehall Trust U/T/A Dated August 1, 2007*, Case No. 5:24-cv-02627-CH

b. *Lehigh Valley 1, LLC v. Saucon Trust, U/T/A Dated October 1, 2007*, Case No. 5:24-cv-02709-CH

c. *Whitehall Fiduciary, LLC*, *as Trustee of Whitehall Trust U/T/A Dated August 1, 2007*, and *Saucon Trust, U/T/A Dated October 1, 2007 (Appellees) and Lehigh Valley 1, LLC (Appellants),* Case No. 25-1899-USCA3

d. *Whitehall Fiduciary, LLC*, *as Trustee of Whitehall Trust U/T/A Dated August 1, 2007*, and *Saucon Trust, U/T/A Dated October 1, 2007 (Appellees) and Lehigh Valley 1, LLC (Appellants)*, Case No. 25-03065-USCA3

**13.03.** Payment of Statutory Fees. All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date from the Debtors' Net Operating Revenues.  Any fees payable to the Trustee post-Effective Date shall be paid from the Debtors' Net Operating Revenues.

**13.04.** Payment of Debtors' Counsel Fees and Costs Incurred Post-Effective Date. On January 27, 2026, the Court entered an Order (Dkt. 140) authorizing the employment of Dilworth Paxson LLP ("Dilworth") as counsel to the Debtors on the terms set forth in the Order. It is the Debtors' intention that Dilworth will continue to represent the Debtors post-confirmation to the extent necessary for the Debtors to take all actions under the Bankruptcy Code that can be taken by a Trustee or Debtor in Possession in furtherance of the Plan, including the prosecution of Causes of Action under Article 5 of the Bankruptcy Code and to otherwise recover funds or assets due to the Estate and action necessary to effectuate the Plan. Fees and expenses earned by Dilworth following the Effective Date shall be paid by the reorganized Debtors in the ordinary course of business or as otherwise provided in the Plan without the requirement of Bankruptcy Court approval.

**13.05.** Modification of Plan.

Subject to the limitations contained herein, (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order and (b) after the entry of the Confirmation Order, the Debtors (prior to the Effective Date), and the Debtors (after the Effective Date), may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A Holder of an Allowed Claim that is deemed to have accepted the Plan still shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of such Holder.

**13.06.** Revocation of Plan.

The Debtors reserve the right, at any time prior to the entry of the Confirmation Order, to revoke or withdraw the Plan.

**13.07.** Cancellation of Instruments and Agreements.

Except as otherwise expressly provided in the Plan, upon the occurrence of the Effective Date, except as otherwise provided herein, all promissory notes, instruments, indentures, or agreements evidencing, giving rise to, or governing any Claim shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors under such promissory notes, instruments; indentures, or agreements relating to the Claims shall be discharged.

**13.08.** Effectuating Documents and Further Transactions.

Abraham Atiyeh, or such other individuals as he may designate, is authorized, subject to the provisions of the Debtors' Formation Documents, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**13.09.** Successors and Assigns.

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, successor or assign of such Person or Entity.

**13.10.** Reservation of Rights.

Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither the filing of this Plan, nor the taking of any action by the Debtors with respect to this Plan shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims prior to the Effective Date.

**13.11.** Exemption from Transfer Taxes.

Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer of real or personal property under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by the Plan (including, but not limited to, any subsequent sale or transfer of assets) shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

**13.12.** Further Assurances.

The Debtors and all Holders of Claims receiving distributions under the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

**13.13.** Entire Agreement.

The Plan supersedes all prior discussions, understandings, agreements, and documents pertaining or relating to any subject matter of the Plan.

**13.14.** Failure of Bankruptcy Court to Exercise Jurisdiction.

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Cases, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

**13.15.** Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code and, therefore, neither any of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

**13.16.** Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the internal laws of the Commonwealth of Pennsylvania shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to the conflict of laws provisions of the Commonwealth of Pennsylvania.

**13.17.** Headings.

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner shall affect the provisions or interpretation(s) of the Plan.

**13.18.** Notices.

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors shall be sent by overnight carrier service or by first class U.S. mail, postage prepaid to:

> Lawrence G. McMichael, Esq.
> Anne M. Aaronson, Esq.
> Michelle V. Lee, Esq.
> Dilworth Paxson LLP
> 1650 Market Street, Suite 1200
> Philadelphia, Pennsylvania 19103
> Counsel to Debtors

**13.19.** Filing of Additional Documents.

On or before the Effective Date, the Debtors may file such agreements and other documents, including a Plan Supplement, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**13.20.** Severability.

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.21.** Notice of Default Under the Plan.

Unless otherwise agreed, no default shall be declared under the Plan unless any payment or performance due under the Plan (other than a payment required on the Effective Date) shall not have been made or deemed made thirty (30) calendar days after written notice of the default is received by the Debtors and the Professionals set forth above in this Article. Any notice of default as provided for in the Plan or in any exhibit to the Disclosure Statement shall (a) conspicuously state that it is a notice of default; (b) describe with particularity the nature of the default, including a reference to the specific provisions of the Plan as to which a default or defaults have allegedly

occurred; and (c) describe any action required to cure the default, including the exact amount of any payment required to cure such default, if applicable.

**13.22.** Reliance.

The Debtors and their agents, employees and professionals, while acting in their capacity as such, including but not limited to, objecting to Claims, making Distributions to Claim Holders holding Allowed Claims and approving settlement of actions, as the case may be, shall be permitted to reasonably rely on any certificates, sworn statements, instruments, reports, claim dockets, Schedules, or other documents reasonably believed by it to be genuine and to have been prepared, or presented by the Bankruptcy Court Clerk's Office, the Debtors, and the Debtors' Professionals.

## ARTICLE XIV
## EFFECT OF CONFIRMATION

Except as otherwise provided in this Plan, Confirmation of the Plan shall vest in the Debtors all property of the Estate, including all tax loss carry forwards and other tax attributes of the Debtors, free and clear of all liens and claims of creditors except to the extent specifically set forth in this Plan or in the Confirmation Order.

Dated:    May 15, 2026                           /s/ **Anne Aaronson**

**DILWORTH PAXSON LLP**
Lawrence G. McMichael
Anne M. Aaronson
Michelle V. Lee
1650 Market St., Suite 1200
Philadelphia, PA 19103
Telephone:  (215) 575-7000
Facsimile:  (215) 575-7200

*Counsel for the Debtors*
*and Debtors-in-Possession*