No. __________

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

**In re WHITEHALL MANOR, INC., et al.,**
***Debtors.***

**LEHIGH VALLEY 1, LLC**
***Appellant*.**

---

# APPELLANT LEHIGH VALLEY 1, LLC'S MOTION FOR LEAVE TO APPEAL PURSUANT TO 28 U.S.C. § 158(A)(3)

*Appeal from the Order of the United States Bankruptcy Court for the Eastern District of Pennsylvania Approving Dilworth Paxson LLP's First Interim Fee Request, No. 25-15245 (PMM)*

---


Matthew A. Hamermesh
Sara E. Smith
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
1735 Market Street, 26th Floor
Philadelphia, PA 19103
(215) 568-6200
mhamermesh@hangley.com
ssmith@hangley.com

BERGER LAW GROUP, P.C.
Phillip D. Berger
919 Conestoga Road
Building 3, Suite 114
Bryn Mawr, PA 19010
(610) 668-0800
Berger@BergerLawPC.com

*Counsel for Appellant Secured Creditor*
*Lehigh Valley 1, LLC*

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 4

A. The Loans and Defaults .......... 5

B. The Foreclosure Actions .......... 5

C. The Dismissal of the Trusts' Bankruptcy Cases .......... 6

D. The Actual Conflict of Interest .......... 6

E. Dilworth's First Interim Fee Request .......... 7

III. ARGUMENT .......... 9

A. Legal Standard .......... 10

B. The Bankruptcy Court's Approval of Dilworth's Interim Fee Request Involves Controlling Questions of Law .......... 11

C. There is a Substantial Ground for Difference of Opinion .......... 19

D. Exceptional Circumstances Exist to Justify an Appeal of the Approval Order, Which May Materially Advance Termination of the Litigation .......... 22

IV. CONCLUSION .......... 24

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*In re American Metallurgical Products Co., Inc.*,
228 B.R. 146 (Bankr. W.D. Pa. 1998) ....................................................21

*In re Crivello*,
134 F.3d 831 (7th Cir. 1998) .......................................................... 20, 21

*In re EWC, Inc.*,
138 B.R. 276 (Bankr. W.D. Okla. 1992) ................................................20

*In re Federated Department Stores, Inc.*,
44 F.3d 1310 (6th Cir. 1995) .............................................................20

*In re Fish & Fisher, Inc.*,
574 B.R. 608 (Bankr. S.D. Miss. 2017) ................................................21

*Hewitt v. United States*,
606 U.S. 419 (2025)...............................................................13, 14, 15

*In re Jade Management Services*,
386 F. App'x 145 (3d Cir. 2010)..........................................................20

*In re Joobeen*,
385 B.R. 599 (E.D. Pa. 2008) ................................................................ 6

*Knipe v. SmithKline Beecham*,
583 F. Supp. 2d 553 (E.D. Pa. 2008)............................................... 19, 20

*Lamie v. U.S. Trustee*,
540 U.S. 526 (2004) ........................................................................ 14, 20

*In re NNN 400 Capitol Center 16, LLC*,
632 B.R. 243 (D. Del. 2021), *aff'd*, Nos. 21-3013, 22-1639,
2022 WL 17831445 (3d Cir. Dec. 21, 2022)...................................... 14, 15

*In re Phila. Newspapers, LLC*,
418 B.R. 548 (E.D. Pa. 2009) ......................................................... 10, 22

*In re Philadelphia Athletic Club, Inc.*,
38 B.R. 882 (Bankr. E.D. Pa. 1984)....................16

*Thorpe v. Thomas Jefferson University Hospitals, Inc.*,
No. 25-7167, 2026 WL 2924666 (E.D. Pa. Sept. 29, 2026)..........10, 11, 15

*U.S. Trustee v. Price Waterhouse*,
19 F.3d 138 (3d Cir. 1994)....................20

*United States v. Jerry*,
487 F.2d 600 (3d Cir. 1973)....................13

*United States v. Mitchell*,
38 F.4th 382 (3d Cir. 2022)....................13

*In re Valley Forge Plaza Associates*,
119 B.R. 471 (E.D. Pa. 1990) .................... 23

*In re Witchey Enterprises, Inc.*,
No. 23-1883, 2024 WL 2827928 (3d Cir. June 4, 2024)....................16, 21

**Statutes**

11 U.S.C. § 101.................... 6

11 U.S.C. § 109 .................... 6

11 U.S.C. § 327 ....................*passim*

11 U.S.C. § 328....................*passim*

11 U.S.C. § 330....................*passim*

11 U.S.C. § 1129.................... 24

28 U.S.C. § 158 ....................1, 10, 24

28 U.S.C. § 1292 .................... 10

**Other Authorities**

Fed. R. Bankr. P. 8004....................1

Appellant Lehigh Valley 1, LLC ("Lender") respectfully moves, pursuant to 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004, for leave to appeal the Bankruptcy Court's Order (ECF 307, attached as Exhibit A) approving the First Interim Application for Compensation and Reimbursement of Expenses of Dilworth Paxson LLP ("Dilworth"), Counsel for the Debtors for the Period December 26, 2025 through May 31, 2026 (the "Interim Fee Request"). The Bankruptcy Court's Order approved fees for the work Dilworth performed in the bankruptcy proceedings on behalf of Whitehall Manor and Saucon Valley Manor (collectively, the "Manor Debtors") and Whitehall Trust and Saucon Trust, (collectively, the "Trusts").[1]

## I. INTRODUCTION

By Order dated October 14, 2026 and entered October 15, 2026, the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"), approved Dilworth's first Interim Fee Request in the amount of $1,293,392.50 in fees and $22,927.64 for reimbursement of expenses (the "Approval Order"). ECF 307. The Bankruptcy Court approved Dilworth's fees for work performed on behalf of ***both*** the Manor Debtors and the Trusts, including work performed **only** for the Trusts, notwithstanding this Court's order vacating Dilworth's authority to jointly represent the

[1] The Bankruptcy Court dismissed the Trusts' bankruptcy cases on March 19, 2026.

Trusts and the Manor Debtors in the bankruptcy proceedings due to the actual conflicts of interest between the Trusts and the Manor Debtors (the "Vacatur Order").

The Bankruptcy Court does not have discretion under section 328(c) or section 330(a)(1) of the Bankruptcy Code to approve fees for counsel whose employment-authority under section 327 was vacated due to an actual conflict of interest. This Court's order vacating Dilworth's employment-authority under section 327, due to an actual conflict of interest, means that Dilworth was never authorized under section 327 to represent the Trusts in the bankruptcy proceedings.[2] Dilworth is thus not entitled to fees under the Bankruptcy Code for work it performed on behalf of the Trusts, individually or jointly with the Manor Debtors. Notwithstanding this prohibition, the Bankruptcy Court still approved fees for (a) work Dilworth performed solely for the benefit of the Trusts, (b) work that benefited both the Trusts and the Manor Debtors, and (c) the Trusts' appellate work in opposition to the appeal of the order authorizing Dilworth's employment, which ultimately resulted

[2] Following the entry of the Vacatur Order, Dilworth continued representing the Manor Debtors, and Robinson & Cole LLP appeared as the Trusts' new bankruptcy counsel on May 28, 2026. ECF 290 (Case No. 25-15241).

in vacatur of that authorization order. The Bankruptcy Court simply did not have authority to approve these fees.

To the extent this Court finds that the Bankruptcy Court did have discretion to approve Dilworth's fees, the Bankruptcy Court clearly abused this discretion in approving nearly all of the requested fees.

First, this Court's Vacatur Order nullified Dilworth's authority under section 327 to represent the Trusts in the bankruptcy proceedings; thus, it was an abuse of discretion to award *any* compensation for services performed on behalf of the Trusts.

Second, counsel employed under section 327 are only entitled to reasonable compensation for "actual, necessary services." 11 U.S.C. § 330(a)(1)(A). Here, the work Dilworth performed on behalf of the Trusts was not necessary for the Manor Debtors' bankruptcy cases, meaning Dilworth is not entitled to compensation for those services.

Because the Approval Order is an interlocutory order, an interlocutory appeal is the only avenue for Lender to promptly address the Bankruptcy Court's improper approval of Dilworth's requested fees for work it performed on behalf of the Trusts in light of this Court's Vacatur Order. There are two issues presented by this appeal—(1) whether a bankruptcy court has discretion to award fees to counsel whose employment-authority under

section 327 was vacated due to a conflict of interest; and (2) if the Bankruptcy Court has discretion, did the Bankruptcy Court abuse that discretion by approving nearly all of Dilworth's fees for work performed on behalf of the Trusts and the Manor Debtors.

Moreover, an interlocutory appeal of these issues would not only expedite the resolution of the bankruptcy proceedings, but these issues also arise in exceptional circumstances because this is the only interim fee application that will raise these particular issues. This Court entered the Vacatur Order on May 18, 2026 and Dilworth's Interim Fee Request includes fees through May 31, 2026. Thus, any subsequent interim requests for fees will not (or should not) include any work performed on behalf of the Trusts. If Lender is not permitted to address these issues now through an interlocutory appeal, Lender will be without redress for many months or years, until these issues come to the fore in Dilworth's final fee application at the end of the bankruptcy cases.

## II. BACKGROUND

This appeal arises from bankruptcy cases involving Appellant as the Lender, and Appellees Whitehall Manor and Saucon Valley Manor, as debtors, and Whitehall Trust and Saucon Trust, as former debtors. *See In re Whitehall Manor, Inc., No. 25-15245 (PMM) (Bankr. E.D. Pa.)* (jointly

administered). The bankruptcy cases were initiated after Lender brought foreclosure actions in this Court against the Trusts for their failures to make any payments on their respective mortgages and loans for over four years.

**A. The Loans and Defaults**

The Trusts own the real property on which the Manor Debtors operate personal care homes in Whitehall and Hellertown, Pennsylvania, and lease that property to the Manor Debtors. *See* ECF 41 ¶¶ 10–11 (Case No. 25-15241). The Trusts' HUD-insured loans have been in default since February 2021; Lender acquired them in a HUD loan sale and holds mortgages on the Trusts' real property and liens on the assets of the Trusts and the Manor Debtors generally. *Id.* ¶¶ 12–14.

**B. The Foreclosure Actions**

Due to the Trusts' defaults, following more than three years of non-payment on their respective mortgages, Lender filed foreclosure actions against each of the Trusts in June 2024 (collectively, the "Foreclosure Actions"). *See* Case Nos. 5:24-cv-2627 (E.D. Pa. 2024) and 5:24-cv-2709 (E.D. Pa. 2024). This Court entered an order in the Foreclosure Actions appointing a Receiver for both properties for the benefit of Lender. Following a discovery dispute, this Court entered an order on December 19, 2025 ordering the Trusts to pay the Receiver a sanctions award by December 29, 2025. ECF 164 (Case No. 24-cv-02627); ECF 138 (Case No. 24-cv-02709).

On December 26, 2025, just three days before the sanctions award against the Trusts was due to be paid, the Trusts and the Manor Debtors each filed a petition for bankruptcy.

### C. The Dismissal of the Trusts' Bankruptcy Cases

On January 14, 2026, Lender filed a motion to dismiss the Trusts' bankruptcy cases because they are trusts not eligible to be debtors under Section 109 of the Bankruptcy Code, 11 U.S.C. § 109. "As a general matter, trusts are not eligible for bankruptcy relief." *In re Joobeen*, 385 B.R. 599, 613 (E.D. Pa. 2008). In particular, "real property trusts cannot be debtors under the Bankruptcy Code…." *Id.* at 614. Rather, only "business trusts" are eligible to be debtors under the Bankruptcy Code. *See* 11 U.S.C. §§ 101(9)(A)(v) & (41), 109(b) & (d).

The Bankruptcy Court granted Lender's motion to dismiss the Trusts' bankruptcy cases (the "Dismissal Order"), concluding "[t]he Trusts are not 'business trusts' within the meaning of the Bankruptcy Code." ECF 263 (Mem. Op.); ECF 264 (Order) (Case No. 25-15241).

### D. The Actual Conflict of Interest

After filing for bankruptcy, the Trusts and the Manor Debtors sought to employ Dilworth as their joint bankruptcy counsel, and Lender objected. As this Court has recounted, in the Foreclosure Actions "the Trusts and their counsel repeatedly represented that they were completely separate and

distinct from the Manor entities, with completely differing interests and ownership." ECF 23, at 2 (Case No. 5:26-cv-0662-CH). Yet, in the bankruptcy cases, the same parties reversed course, contending that they are "co-dependent entities" whose "interests are fully aligned," and the Debtors' principal, Abraham Atiyeh, testified that his counsel's earlier representations to this Court were "a mistake," "improper," and "incorrect." *Id.* at 2-3.

Despite acknowledging that there were conflicts of interest between the Manor Debtors and the Trusts, the Bankruptcy Court approved Dilworth as joint bankruptcy counsel for the Manor Debtors and the Trusts. ECF 140 (Case No. 25-15241). However, on May 18, 2026, this Court properly vacated the Bankruptcy Court's order authorizing Dilworth to jointly represent the Manor Debtors and the Trusts as bankruptcy counsel, finding that "an actual conflict of interest exists that bars Dilworth from representing both groups of Debtors." ECF 23, at 5 (Case No. 5:26-cv-0662-CH); ECF 24, at ¶ 1 (Case No. 5:26-cv-0662-CH) (the "Vacatur Order").[3]

### E. Dilworth's First Interim Fee Request

On August 4, 2026, Dilworth filed its first Interim Fee Request for the period from December 26, 2025 through May 31, 2026. ECF 267 (Case No. 25-15245). Despite this Court's Order vacating the Bankruptcy Court's order

[3] The Trusts voluntarily withdrew their appeal of this Court's Vacatur Order.

authorizing Dilworth's employment as joint bankruptcy counsel, Dilworth sought fees for work performed on behalf of ***both*** the Trusts and the Manor Debtors, and also for work performed solely for the Trusts. *Id.* at ¶ 5 ("All services rendered and fees incurred for which compensation or reimbursement is requested were performed or incurred for or on behalf of all the Debtors."). Dilworth sought fees in the amount of $1,301,020.50 and expenses in the amount of $22,927.64, for a total amount of $1,323,948.14 for the period from December 26, 2025 through May 31, 2026. *Id.* at ¶ 10. The fees and expenses relate to 14 categories of work, including, among other things, work relating to (i) the preparation of weekly budgets and monthly operating reports, (ii) Lender's objection to Dilworth's representation as joint bankruptcy counsel for the Trusts and Manor Debtors, (iii) Lender's motion to dismiss the Trusts' bankruptcy cases and related appeals, (iv) the single asset real estate determination, and (v) business trust registration. *Id.* at ¶ 15.

Lender objected to Dilworth's Interim Fee Request, arguing that "Dilworth is not entitled to any compensation and reimbursement for its representation of the Trusts because its authorization to represent the Trusts pursuant to Section 327(a) was vacated by the District Court on appeal, meaning that Dilworth was not employed pursuant to Section 327(a) as

bankruptcy counsel." ECF 272 at ¶ 8 (Case No. 25-15245). In the alternative, Lender argued that the Bankruptcy Court should exercise its discretion under section 328(c) to decline to compensate Dilworth for any work performed on behalf of the Trusts. *Id.* at ¶¶ 9-10.

Following a September 29, 2026 evidentiary hearing, the Bankruptcy Court approved Dilworth's Interim Fee Request "in the amount of $1,293,392.50 in fees and $22,927.64 for reimbursement of expenses on behalf of the Debtors."[4] Oct. 14, 2026 Order, ECF 307 (Case No. 25-15245). This is the order being appealed.

## III. ARGUMENT

Lender seeks leave to appeal the Bankruptcy Court's order approving Dilworth's first Interim Fee Request seeking fees for work performed on behalf of the Trusts notwithstanding this Court's Vacatur Order rendering the authorization of Dilworth's employment as bankruptcy counsel for the Trusts a legal nullity.

---

[4] On September 29, 2026, the U.S. Trustee and Dilworth "agreed, subject to Court approval, to a $7,628.00 reduction in the fees and a $0 reduction in expenses in order to resolve the informal issues filed by the United States Trustee." ECF 296. As a result, the Bankruptcy Court approved 99.4% of the fees Dilworth requested, and 100% of expenses.

### A. Legal Standard

District Courts "shall have jurisdiction to hear appeals … with leave of the court, from other interlocutory orders and decrees … of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(3). Courts in this Circuit "confronted with the decision whether to grant leave to allow an interlocutory appeal are informed by the criteria in 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district courts to the courts of appeal." *In re Phila. Newspapers, LLC*, 418 B.R. 548, 556-57 (E.D. Pa. 2009) (collecting cases).

Under Section 1292(b), district courts may "grant leave to file an interlocutory appeal when the order at issue: (1) involves a controlling question of law upon which there is (2) substantial grounds for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation." *Id.* at 557. "The burden is on the party seeking certification to establish that exceptional circumstances justify a departure from the basic policy against piecemeal litigation and of postponing appellate review until after the entry of final judgment." *Thorpe v. Thomas Jefferson Univ. Hosps., Inc.*, No. 25-7167,

2026 WL 2924666, at *2 (E.D. Pa. Sept. 29, 2026) (citation and internal quotation marks omitted).

### B. The Bankruptcy Court's Approval of Dilworth's Interim Fee Request Involves Controlling Questions of Law

"A controlling question of law is one which, at a minimum, would be reversible error on final appeal if decided erroneously." *Thorpe*, 2026 WL 2924666, at *2. "A question of law is also controlling if it is 'serious to the conduct of the litigation, either practically or legally.' Practically, 'saving of time of the district court and of expense to the litigants was deemed by the sponsors to be a highly relevant factor.'" *Id.* (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)).

Whether the Bankruptcy Court has discretion to approve fees for counsel whose employment authority was vacated due to an actual conflict of interest, and whether the Bankruptcy Court abused its discretion by approving nearly all of the requested fees, are controlling questions of law. These questions are not only serious legal questions at issue in this litigation, but if decided in a final order, the Bankruptcy Court's order "would be reversible error." *Id.*

Section 330 of the Bankruptcy Code provides that: "the court may award to a … ***professional person employed under section 327*** … reasonable compensation for actual, necessary services rendered by the …

professional person, or attorney and by any paraprofessional person employed by any such person; and … reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1) (emphasis added). Section 328(c) of the Bankruptcy Code provides that:

> [T]he court may deny allowance of compensation for services and reimbursement of expenses of a ***professional person employed under section 327*** … if, at any time during such professional person's employment under section 327 …, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c) (emphasis added). Thus, an express requirement for such compensation under the Bankruptcy Code is that the person be "employed under section 327" of the Bankruptcy Code. 11 U.S.C. §§ 328(c), 330(a)(1).

As set forth above, after acknowledging a conflict of interest between the Trusts and the Manor Debtors and over Lender's objection to that effect, the Bankruptcy Court still authorized Dilworth's joint representation of the Trusts and the Manor Debtors. ECF 140 (Case No. 25-15241). This Court properly vacated the Bankruptcy Court's order, noting that the actual conflict of interest precluded Dilworth from representing both the Trusts and the Manor Debtors jointly as bankruptcy counsel. ECF 23, 24 (Case No. 5:26-cv-0662-CH). Notably, this actual conflict of interest existed throughout the

entirety of the bankruptcy proceedings, including on the Petition Date and at the time of the Bankruptcy Court's approval of Dilworth's joint employment.

"[V]acated court orders are void *ab initio* and thus lack any prospective legal effect. By operation of legal fiction, the law acts as though the vacated order never occurred." *Hewitt v. United States*, 606 U.S. 419, 431 (2025) (citations omitted). "[T]he general rule [is] that when a court vacates an order previously entered, the legal status is the same as if the order never existed. The order having become a nullity, no rights, constitutional or otherwise, can be considered as accruing from it." *United States v. Jerry*, 487 F.2d 600, 607 (3d Cir. 1973) (citations omitted); *see also United States v. Mitchell*, 38 F.4th 382, 388 (3d Cir. 2022) ("To vacate is 'to cancel or rescind' and to 'render an act void.'").

The practical effect of this Court's Vacatur Order is that Dilworth was never authorized to represent both the Trusts and the Manor Debtors, and thus Dilworth was not a "professional person employed under section 327" entitled to fees for work performed on behalf of the Trusts. *See Hewitt*, 606 U.S. at 431; *Jerry*, 487 F.2d at 607.

Sections 328(c) and 330(a)(1) afford the Bankruptcy Court discretion to award or deny fees to a limited, enumerated group of people, including

bankruptcy counsel employed under section 327. *See* 11 U.S.C. §§ 328(c), 330(a)(1). Because—in light of the Vacatur Order—Dilworth was never authorized to represent the Trusts under section 327, the Bankruptcy Court simply had no discretion to award fees and expenses to Dilworth for work performed on behalf of the Trusts (jointly or severally). *See In re NNN 400 Capitol Ctr. 16, LLC*, 632 B.R. 243, 256, 266 (D. Del. 2021), *aff'd*, Nos. 21-3013, 22-1639, 2022 WL 17831445 (3d Cir. Dec. 21, 2022) (non-precedential) ("An attorney not employed under § 327, however, cannot be paid from the bankruptcy estate for services rendered to the debtor in possession."); *see also Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("A debtor's attorney not engaged as provided by § 327 is simply not included within the class of persons eligible for compensation" under section 330(a)(1).). Dilworth argued below that the Vacatur Order did not reach services rendered while the retention order was in effect. ECF 295 ¶ 80. But that is what vacatur means. *Hewitt*, 606 U.S. at 431.

For the reasons above, the Bankruptcy Court's decision to approve more than $1 million in fees for counsel (subject to a $7,628.00 reduction) whose employment-authority was specifically vacated due to an actual conflict of interest would constitute reversible error if decided in a final order. Dilworth, in its Interim Fee Request, sought compensation for work

performed exclusively for the benefit of the Trusts—*e.g.*, filing the bankruptcy for the Trusts, registering the Trusts as business trusts, and litigating Lender's motion to dismiss the Trusts' bankruptcy cases. Dilworth also sought compensation for work performed for the benefit of both the Trusts and the Manor Debtors—*e.g.*, preparing weekly budgets and monthly operating reports.

Simply put, the Bankruptcy Court did not have discretion to approve all of those fees because Dilworth's authority to represent the Trusts under section 327 of the Bankruptcy Code was nullified by this Court's Vacatur Order. *See Hewitt*, 606 U.S. at 431; *In re NNN 400 Capitol Ctr. 16*, 632 B.R. at 256. Without authority or discretion to award such fees, the Bankruptcy Court's approval of those fees constitutes reversible error. Accordingly, whether the Bankruptcy Court had discretion to award fees to counsel whose employment authority was vacated is a controlling question of law. *Thorpe*, 2026 WL 2924666, at *2.

To the extent this Court finds that the Bankruptcy Court had discretion to award fees notwithstanding the Vacatur Order, it is a controlling question of law whether the Bankruptcy Court abused its discretion by awarding nearly all (over 99%) of the fees Dilworth requested.

First, for all of the reasons set forth above, the Bankruptcy Court abused its discretion by approving Dilworth's requested fees despite this Court's Vacatur Order and finding that an actual conflict of interest precluded Dilworth from representing both the Manor Debtors and the Trusts. *See, e.g., In re Witchey Enterprises, Inc.*, No. 23-1883, 2024 WL 2827928, at *1-2 (3d Cir. June 4, 2024) (affirming district court's order finding "that the Bankruptcy Court did not abuse its discretion to deny [counsel's] compensation under § 328(c)" "[b]ecause the District Court agreed that [counsel's] concurrent representation of Witchey and the Debtor was a conflict of interest"); *In re Phila. Athletic Club, Inc.*, 38 B.R. 882, 883 (Bankr. E.D. Pa. 1984) ("[T]he bankruptcy court [has] express authority to deny fees in cases of a conflict of interest[.]").

Second, the approved fees include fees for services that were not necessary to the Manor Debtors' bankruptcy cases, and thus, Dilworth is not entitled to reasonable compensation for those services under the Bankruptcy Code. Because Dilworth is authorized to represent (only) the Manor Debtors under section 327, it is entitled (as to the Manor Debtors) only for "reasonable compensation for ***actual, necessary services*** rendered by the … professional person, or attorney[.]" 11 U.S.C. § 330(a)(1) (emphasis added). And the Code is mandatory on this point: "the court shall not allow

compensation for . . . services that were not—(I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A)(ii).

However, Dilworth requested and the Bankruptcy Court approved fees for work Dilworth performed exclusively on behalf of the Trusts. This includes, among other things, filing the Trusts' bankruptcies, preparing all of the Trusts' schedules, researching the tax implications of a business trust, then work relating to registering the Trusts as business trusts in Pennsylvania during the bankruptcy proceedings, and work defending against Lender's motion to dismiss the Trusts' bankruptcy cases on the ground that the Trusts are not business trusts. *See* ECF 267. Work performed exclusively on behalf of the Trusts is simply not work that is necessary for the Manor Debtors' bankruptcy cases.

Before the Bankruptcy Court, Dilworth generally argued that this work was necessary given the purported interconnectedness and "interdependence" of the Manor Debtors and the Trusts (a connection the Trusts vociferously denied in the Foreclosure Actions, as this Court is well aware). *See generally* ECF 295. Even if some work performed on behalf of both the Trusts and the Manor Debtors was necessary for the Manor Debtors' bankruptcy cases, the Bankruptcy Court erred by failing to evaluate the

validity of the time entries to determine whether the fees sought were truly necessary for the Manor Debtors' bankruptcy cases.

To demonstrate this point to the Bankruptcy Court, Lender prepared demonstrative exhibits, which it presented during the hearing on Dilworth's Interim Fee Request. *See* LVx 127; LVx 128, attached hereto as Exhibits B and C. These exhibits reflect all of the time entries submitted by Dilworth in support of its Interim Fee Request. *See* Exhibits to ECF 267. Lender reviewed every time entry and color-coded them in eight categories of work: (1) Lender's Motion to Dismiss the Trusts' bankruptcy cases, (2) appeal of the Bankruptcy Court's order dismissing the Trusts, (3) the Trusts' single asset real estate issue, (4) appeal of order authorizing Dilworth's retention, (5) Section 365 issue, (6) Trust-specific work, (7) likely both Trusts and Manors, and (8) other. *See* LVx 127; LVx 128.[5] These exhibits provide a comprehensive breakdown of the categories of work for which Dilworth sought compensation. It is unclear, given the Bankruptcy Court's prompt ruling at the hearing on Dilworth's Interim Fee Request, to what extent the

[5] LVx 127 and LVx 128 are demonstrative exhibits. LVx 128 is a spreadsheet with the time entries Dilworth submitted in support of its Interim Fee Request. Lender's counsel individually reviewed and color-coded each time entry. LVx 127 shows the total amount of fees in each category of work that Lender's counsel color-coded for; the totals were produced using AI and verified by counsel.

Bankruptcy Court considered, if at all, the necessity of all submitted work to the Manor Debtors' bankruptcy cases before approving 99.4% of Dilworth's requested fees and 100% of expenses.

### C. There is a Substantial Ground for Difference of Opinion

"Substantial ground for difference of opinion [exists when the matter involves] one or more difficult and pivotal questions of law not settled by controlling authority." *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 553, 599 (E.D. Pa. 2008) (quotations omitted). "In other words, substantial grounds for difference of opinion exist where there is genuine doubt or conflicting precedent as to the correct legal standard. Conflicting and contradictory opinions can provide substantial grounds for a difference of opinion." *Id.* at 599-600 (cleaned up).

Here, there is no question that there is a substantial ground for difference of opinion. First, there is no controlling law in this Circuit on the issue of whether the Bankruptcy Court has discretion to award fees to counsel whose employment-authority was vacated due to a conflict of interest, a fact Dilworth conceded. *See* ECF 295, at ¶ 62. Because there is no settled controlling law in this Circuit as to whether a Bankruptcy Court has discretion to approve fees to counsel where their employment-authority under section 327 was vacated, there is substantial ground for difference of

opinion. *See Knipe*, 583 F. Supp. 2d at 600 ("[T]he absence of controlling law on a particular issue can constitute substantial grounds."). Indeed, the Third Circuit has expressly reserved the question, *In re Jade Mgmt. Servs.*, 386 F. App'x 145, 150 n.7 (3d Cir. 2010) (non-precedential), and Dilworth relied below on dicta in *U.S. Trustee v. Price Waterhouse*, 19 F.3d 138, 142 (3d Cir. 1994), which predates *Lamie*. ECF 295 ¶ 61.

Second, there is conflicting precedent among the circuit courts as to whether a bankruptcy court has discretion to allow compensation to counsel whose employment-authority under section 327 was vacated or revoked due to a conflict of interest that existed throughout the duration of their representation. *Compare In re Federated Dep't Stores, Inc.*, 44 F.3d 1310, 1320 (6th Cir. 1995) (holding "that a valid appointment under § 327(a) is a condition precedent to the decision to grant or deny compensation under § 330(a) or § 328(c)"), *and In re EWC, Inc.*, 138 B.R. 276, 281 (Bankr. W.D. Okla. 1992) (holding that "[s]uch employment [of a professional with a conflict of interest] is void *ab initio*" and that "the court *must* deny compensation for services performed during the conflict") (emphasis added), *with In re Crivello*, 134 F.3d 831, 838 (7th Cir. 1998) (holding that "§ 328(c) does not require that the professional person be validly employed under § 327(a). Section 328(c) simply requires that the professional person

‘be employed under section 327’”), *and In re Fish & Fisher, Inc.*, 574 B.R. 608, 619 (Bankr. S.D. Miss. 2017) (agreeing with the interpretation of section 328 in *In re Crivello* and concluding that “under § 328(c), the Court may deny compensation to a professional found not to be disinterested, but the Court is not required to deny compensation”).

Finally, there is conflicting precedent within the Third Circuit as to whether a bankruptcy court properly exercised its discretion in denying fees to counsel whose employment-authority under section 327 was revoked or vacated due to a conflict of interest. *Compare In re Witchey Enterprises*, 2024 WL 2827928, at *1 (“The Bankruptcy Court did not abuse its discretion when it denied [Appellant’s] Fee Application based on a proper finding of an undisclosed conflict of interest[.]”), *with In re American Metallurgical Products Co., Inc.*, 228 B.R. 146, 160 (Bankr. W.D. Pa. 1998) (concluding that although counsel “was not a ‘disinterested person’ within the meaning of the Bankruptcy Code”, it would be inequitable and “inherently unfair” to deny “compensation and reimbursement of expenses after services have been performed” (quoting 3 *Collier on Bankruptcy* ¶ 328.05[4])).

### D. Exceptional Circumstances Exist to Justify an Appeal of the Approval Order, Which May Materially Advance Termination of the Litigation

In the context of a bankruptcy case, the third factor—"materially advance the ultimate termination of the litigation"—has been interpreted to mean "expedit[ing] a decision on confirmation of the Debtors' proposed Plan, thereby facilitating the ultimate termination of these bankruptcy proceedings." *In re Phila. Newspapers*, 418 B.R. at 557. "Because an interlocutory appeal represents a deviation from the basic judicial policy of deferring review until the entry of a final judgement [sic], the party seeking leave to appeal an interlocutory order must also demonstrate that exceptional circumstances exist." *Id.* (quotation omitted).

Here, exceptional circumstances exist to justify an interlocutory appeal because this is the only interim fee application that will involve the issues of (i) whether the Bankruptcy Court has discretion to approve compensation for work performed on behalf of a debtor whom counsel is no longer authorized to represent due to a conflict of interest, and (ii) whether, if the Bankruptcy Court has discretion, did it abuse this discretion by awarding 99.4% of the requested fees.

Dilworth's Interim Fee Request seeks compensation for services performed from December 26, 2025 through May 31, 2026. ECF 267. This

Court entered the Vacatur Order on May 18, 2026 vacating Dilworth's authority to be employed as joint bankruptcy counsel and ordering the Trusts to retain new bankruptcy counsel. ECF 24 (Case No. 5:26-cv-0662-CH). Because the Trusts' new bankruptcy counsel appeared on May 28, 2026, ECF 290 (Case No. 25-15241), Dilworth should not perform any additional work on behalf of the Trusts and thus presumably will not seek fees for such Trust work in subsequent fee requests.

If Lender is not permitted to pursue an interlocutory appeal of the Approval Order, Lender will be forced to stand by until Dilworth files a final fee application. That will not happen until a plan of reorganization is confirmed; the bankruptcy cases are converted to Chapter 7, dismissed, or otherwise end; or Dilworth withdraws from the cases completely. Dilworth's final fee application may not be filed for over a year. Waiting until the final fee application could prejudice Lender because the Manor Debtors would be permitted to use Lender's cash collateral to pay Dilworth a total of more than $1 million including fees for work that Dilworth was not authorized to do.

Nor is the interim character of the award a reason to defer review. Unlike a challenge to reasonableness, *cf. In re Valley Forge Plaza Assocs.*, 119 B.R. 471, 473 (E.D. Pa. 1990), the first question here goes to whether Dilworth may be paid at all for its Trust work, and the answer will not change

at the final-application stage. Resolving it now will avoid disgorgement proceedings, *see* 11 U.S.C. § 330(a)(5), and advance confirmation, because allowed fees must be paid in cash on a plan's effective date. 11 U.S.C. § 1129(a)(9)(A).

## IV. CONCLUSION

For the foregoing reasons, this Court should grant Lender leave to appeal the Bankruptcy Court's October 14, 2026 Order pursuant to 28 U.S.C. § 158(a)(3).[6]

Dated: October 28, 2026

Respectfully submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

By: */s/ Matthew A. Hamermesh*
Matthew A. Hamermesh
Sara E. Smith
1735 Market Street,
26th Floor Philadelphia, PA 19103
(215) 568-6200
mhamermesh@hangley.com
ssmith@hangley.com

*-and-*

[6] Counsel for Lender used AI in the preparation of this Motion. Counsel used Westlaw's AI Deep Research to assist with legal research and used AI to calculate the totals in LVx 127. Counsel performed a cite-check and verified that each legal authority cited was proper and verified the totals in LVx 127.

BERGER LAW GROUP, P.C.
Phillip D. Berger
919 Conestoga Road, Building 3,
Suite 114
Bryn Mawr, PA 19010
(610) 668-0800
Berger@BergerLawPC.com

*Attorneys for Secured Creditor Lehigh Valley 1, LLC*

## CERTIFICATE OF COMPLIANCE

I, Matthew A. Hamermesh, hereby certify on October 28, 2026, pursuant to Federal Rule of Bankruptcy Procedure 8013(f)(3)(A), that the foregoing Appellant Lehigh Valley 1, LLC's Motion for Leave to Appeal Pursuant to 28 U.S.C. § 158(a)(3) contains 5,114 words, excluding the items exempted by Rule 8015(g), and therefore does not exceed 5,200 words.

*/s/ Matthew A. Hamermesh*
Matthew A. Hamermesh

## CERTIFICATE OF SERVICE

I, Matthew A. Hamermesh, hereby certify that on October 28, 2026, I caused the foregoing Appellant Lehigh Valley 1, LLC's Motion for Leave to Appeal Pursuant to 28 U.S.C. § 158(a)(3) to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Matthew A. Hamermesh*
Matthew A. Hamermesh